TOWN OF BARNET v. J. D. ABBOTT, H. J. HAZELTON,
L. S. BROCK, J. H. CLEMENT.

*Town Treasurer. His Sureties. Bond must be Sealed when
Signed, or some one Authorized by the Sureties
to Seal. Date. Parol Evidence.*

1. The bond of a town treasurer, given for the faithful performance of his official duty, not executed till near the close of his term, but *ante-dated*, binds his sureties to respond in damages for all malfeasance, or misfeasance, in office, during the year for which he was elected.

2. The treasurer had appropriated the town's money to his own use; but the default occurred *prior* to his last election, and, in fact, not during the time covered by the bond. *Held*, in an action on the bond, that the sureties are not liable.

3. When the bond was delivered to the selectmen by the treasurer, it was signed and sealed; but when it was *executed*, it was not sealed; and the sureties never *sealed it;* and never authorized any one to affix a seal to it. *Held*, defectively executed.

4. Parol evidence is admissible to prove that a bond was *ante-dated;* that it was not *sealed* at the time of signing; and that the sureties never *authorized* any one to seal it.

DEBT on the official bond of a town officer. Plea in abatement. Demurrer to the plea.

This cause was heard at the June Term, 1878, upon the demurrer to the plea in abatement. The demurrer was sustained and the plea adjudged insufficient; and the parties pleading, ordered to answer over. Exceptions by the defendants Hazelton, Brock and Clement. Exceptions allowed and ordered to lie. The case was referred to Hon. H. Henry Powers. At the June Term, 1879, Caledonia County, Ross, J. presiding, sustained, *pro forma*, the plaintiff's exceptions to the master's report; and, *pro forma*, rendered judgment on the report for the plaintiff to recover $616.97, with interest from March 5th, 1878, and costs; to which the defendant excepted.

REPORT.

J. D. ABBOTT, Treasurer and Town Clerk, To TOWN OF BARNET,

DR.

| | | | |
|---|---|---|---|
| March 1, 1877, | To balance in Treasury, | No. 1 | $917.92 |
| From Apr. 12 to Nov. 21, | From Collector, | No. 2 | 750.00 |

Barnet *v.* Abbott.

| From Apr. 7 to Nov. 26, | Of Selectmen, | No. 3 | $735.00 |
| Dec. 1, | Amount of Dog License, | No. 4 | 135.00 |
| Jan. 5, | Cash of Dickinson & Lang, | No. 5 | 66.33 |
| Feb. 27, | Cash of Gilchrist and others for the support of Mrs. Bundy, | No. 6 | 54.00 |
| | Cash of Justice Clark for fines, | No. 7 | 10.00 |

$2668.25

CR.

| By Cash paid Overseer's Orders, | $948.30 |
| By Cash paid Selectmen's Orders, | 872.56 |
| School Fund, | 25.14 |

$1846.00

Balance due Town, $822.27.

The undersigned, referee, would respectfully report, that pursuant to notice he met the parties with their counsel at Hall's hotel, in Barnet, on Feb. 11, 1879, and heard said cause. The action is predicated upon a bond, purporting to have been executed March 6th, 1877, by defendant Abbott, as principal, and by the other defendants as sureties, and conditioned for the faithful discharge of official duty by said Abbott as town treasurer of Barnet, for the year beginning on the first Tuesday in March, 1877. The defendant Abbott made no defense ; and I find that the plaintiff is entitled to recover as against him, the sum of $616.97, and interest from March 5, 1878. The execution of the bond was denied by the sureties ; and to prove such execution by the sureties, the plaintiff called the sureties as witnesses ; and asked each if he signed his name to the instrument, to which each surety answered that he did. On cross-examination, and against the objection and exception of the plaintiff, the sureties each testified that they signed the instrument in December, 1877 ; and that when they signed the same no seals were upon it ; that they affixed no seals ; and that they authorized no one to affix any seals to the same. I find from other competent evidence, that said Abbott delivered this instrument to the selectmen in December, 1877, sealed and signed as it now appears. The plaintiff put the bond in evidence, and the same is referred to. I find from the testimony of the sureties, that they understood, when they signed the instrument, that it was a bond executed to secure the faithful discharge of said Abbott's official duties, as such treasurer for the then current official year.

No other evidence as to the execution of said bond was offered on either side. If the parol evidence, relating to the ensealing and the time of signing said instrument objected to by the plaintiff, was properly received, I find that said bond was in fact signed by said sureties in December, 1877; that it then bore no seals; that the sureties never attached any seals to their signatures; nor authorized any person to affix them. The question as to the admissibility of such parol evidence, and the validity of the bond as against said sureties upon the facts lastly above found, is submitted to the court. If the evidence objected to was improperly received, then I find that the bond was duly sealed by the sureties as it purports; though I find from other evidence that it was in fact signed by the sureties in December, 1877. It was conceded, that the persons named in the bond as such, were selectmen of Barnet for the year 1877; and that said Abbott had been treasurer for several years preceding 1877. The plaintiff claimed to recover the amount named in the specification hereto attached.

Item 1.—As to the first item, " Balance in treasury March 1, 1877, $917.92," I find the following facts: Just before the annual meeting in March, 1877, the auditors settled with Abbott, who was treasurer the preceding year; and found on such settlement, that there was in his hands as treasurer, or should be in his hands to balance his account, said sum of $917.92. No money was produced by Abbott, and none called for by the auditors. I find that for two years at least before March, 1877, said Abbott had kept no town funds separate from his private funds; but had used the money of the town in his own business, and mixed it indiscriminately with his own; that he had credit, so that he was able to answer current calls of the town for money; and that at the time he settled with the auditors as aforesaid, he had either funds on hand, or available credit, so that he could have produced the money called for by the balance shown in his account, had it been demanded of him; but in point of fact, he then had no money that could be identified as belonging to the town in his hands; and in point of fact had before such settlement used in his own business the money represented by such balance; that he received various amounts of money during the year 1877; and paid out various amounts; and at the end of the year, in March, 1878, the balance against him was less than at the beginning; that during the year he intermingled such moneys with his own as before. The sureties claimed that the $917.92 had been misappropriated before the term of office commenced, covered by their bond. The question of their liability for this item is submitted to the court.

Item 2.—I find as to the second item, that the collector paid to

Abbott as treasurer between April 26 and Nov. 21, 1877, the sum of $749.94, and took his receipts therefor.

Item 3.—I find that the selectmen paid to Abbott, May 28, 1877, $600 ; and that Abbott received the same as treasurer, for the use of the town, as shown by his receipt. As to this sum of $600, I find that the selectmen had need of money to answer calls made upon the town—one Dr. Thompson had an award of damages against the town which was payable at once ; and other demands were made which rendered it necessary for money to be had from some source ; the selectmen understood from the treasurer that there were not funds in the treasury sufficient to answer the calls made ; and thereupon on said May 28th, 1877, the selectmen borrowed of Moses Gilfillan, 3d, the sum of $600 ; gave said Gilfillan a town order therefor, and paid the money into the treasury as aforesaid. On the 26th of November, 1877, under a like necessity, the selectmen borrowed of Alex'r. Holmes the sum of $100 ; gave him a town order therefor, and paid the money into the treasury, taking the treasurer's receipt for the same. The town by vote had never authorized the selectmen to borrow either of the foregoing sums ; but the selectmen supposed they had the right so to do, by virtue of their office. The orders, given to Gilfillan and Holmes, were paid by the town in February, 1878. Upon these facts the sureties claimed they should not be holden on the ground that the selectmen had no power to bind the town by such loans. This question is submitted to the court ; and whether, if the action of the selectmen was irregular, the treasurer and his sureties can be allowed to stand upon such a defense. I find that the selectmen paid to Abbott as treasurer, May 12, 1877, the sum of $20, and took his receipt, and the same is properly chargeable in his account as treasurer. This item is embraced in No. 3 of plaintiff's specifications.

Item 4.—I find that said Abbott was town clerk in 1877; and that he received as clerk for dog licenses, during the year before March 31st the sum of $1.31 ; and that by the provision of No. 16, acts of 1876, it was his duty to pay the same into the treasury on or before the first day of December, 1877. No evidence was offered to show whether Abbott in fact transferred this money to his account as treasurer. If the presumption arises that Abbott did what the law required him to do, this item is properly chargeable to him as treasurer ; otherwise not.

Item 5.—I find that the sum of $66.33 was paid to Abbott as treasurer, on a note held by the town against Dickinson & Lang, in January, 1877 ; and the same cannot properly be recovered of

the sureties, it being paid during a former term of office ; but the same is chargeable to Abbott.

Item 6.—No evidence was given in support of this charge ; and the same is not chargeable to any of the defendants.

Item 7.—No evidence was given in support of this charge, and the same is disallowed. The plaintiff introduced evidence, from which I find the fact that the share of public school money to which district No. 12 was entitled in 1877, was $96.10, of which Abbott paid to said district only $50, leaving a balance due the district of $46.10 ; but it is not apparent how the plaintiff can recover anything from this proof ; the balance due that district must be parcel of the money paid to Abbott by the collector, and the whole amount so paid is hereinbefore charged to Abbott. It was agreed that Abbott has properly paid during the official year 1877, on selectmen's and overseer's orders and otherwise, the sum of $1,846, as shown on the specifications. It was shown that the town had never by vote required the treasurer to procure a bond ; and the selectmen testified that they required it in 1877, because they supposed they had such right. Some evidence was introduced, tending to show that the selectmen had knowledge before the sureties signed the bond in suit, that Abbott had been in the habit of using town funds in his own business ; but I do not find the fact that they had such knowledge. I do find that Abbott failed in December, 1877, shortly after said bond was signed by the sureties ; and that prior to his failure, and during the whole of the year 1877, there were rumors in circulation in Barnet and vicinity, that he was liable to fail ; that the then selectmen had heard such rumors, and this fact stimulated them to have him execute a bond to the town. I think it probable that the sureties heard as much said relating to Abbott's possible insolvency as the selectmen did ; but at all events the selectmen had no knowledge that any misappropriation of town money had been made before said bond was signed by said sureties and delivered to the town. The selectmen had no agency in procuring the signatures of the sureties to said bond, but they signed the same at Abbott's request alone.

Item 1.—As to item 1, I further report that the auditors' report in March, 1877, was printed and freely circulated through town, and I am satisfied that the sureties then saw and knew the condition of the treasury, and the amount found due from the treasurer on such settlement.

Upon the foregoing facts I find and report that defendant Abbott is liable in this action as follows :

. Barnet *v.* Abbott.

|  |  |
|---|---|
| Item 1, Balance in his hands, | $917.92 |
| " 2, Cash paid by Collector, | 749.94 |
| " 3, " " " Selectmen, | 720.00 |
| " 4, " by Dog Licenses, | 131.00 |
|  | 2518.86 |
| Less amount paid out, | 1846.00 |
|  | 672.86 |
| And Item No. 5, | 66.33 |
|  | $739.19 |

That interest on this balance of $739.19, should be computed from March 5, 1878, when Abbott's term of office expired.

The other items covered by the specifications either accrued during a former year, and so cannot be recovered in this action on the bond of 1877, or have failed for want of proof. Whether the sureties can be held liable for any, and what items, is submitted to the court. Whatever items may be held recoverable of the sureties by the court, should draw interest from said March 5, 1878. All which is respectfully submitted.

H. H. POWERS, *Referee.*

### TOWN TREASURER'S BOND.

Know all men by these presents, that I, J. D. Abbott, as principal, and H. J. Hazelton, Lucius S. Brock, and J. H. Clement, as sureties, of Barnet, in the county of Caledonia, and state of Vermont, our heirs, executors, or administrators, are firmly held and bound unto the selectmen; viz.: John Morrison, John Somers, and Henry A. Gilfillan, or their successors in office, in the sum of ten thousand dollars lawful money of the United States, to be paid to the said selectmen or their successors in office, to the payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents.

Sealed with our seals and dated this 6th day of March, 1877.

The condition of this obligation is such that if the said J. D. Abbott shall well and faithfully execute the offices of town treasurer and trustee, to which offices he was duly elected for one year, accounting for all moneys that shall come into his hands, papers, and all matters pertaining to said offices, and, at the expiration of his said offices shall deliver up to his successor in office all moneys, papers and matters in his care and custody, and shall in all things observe the law and statute in relation to said offices, then this obligation to be null and void, otherwise in force and virtue in law.

|  |  |
|---|---|
| J. D. ABBOTT, | [L. S.] |
| H. J. HAZELTON, | [L. S.] |
| LUCIUS S. BROCK, | [L. S.] |
| WITNESS : ELLA ABBOTT. | J. H. CLEMENT, [L. S.] |

After the hearing and report, it was discovered that Abbott had paid some other orders, reducing the amount due the town from him to $616.97 ; and this was given in a supplemental report.

*Belden & Ide,* for the plaintiff.

The town had the right, and in the absence of any corporate action upon the subject, the selectmen, in the exercise of their general power and duty, to supervise the concerns of the town, given by statute, also, had the right, to require such bond. *Pawlet* v. *Strong et als.,* 2 Vt. 492; *Williston* v. *White,* 11 Vt. 40; *Postmaster Gen.* v. *Rice et al.,* Gilpin R. 554; 6 Binny, 292; 1 Mich. 355; *Hoboken* v. *Harrison,* 30 N. Y. Law, 73; *Montville* v. *Haughton,* 7 Conn. 543.

The bond as delivered to the selectmen, was by them accepted as a full compliance with their requirement that a good and sufficient bond should be given; and its apparent, perfect and valid condition being the work of the sureties and their agent, induced the selectmen so to accept it, and prevented their calling for and getting another bond. *Shaw* v. *Bebee,* 35 Vt. 208; *Soper* v. *Frank,* 47 Vt. 368; *Hoboken* v. *Harrison,* 30 N. Y. Law, 73; Dillon Munic. Corp. s. 155; *Passumpsic Bank* v. *Goss et al.,* 31 Vt. 315.

" The obligor upon the bond of a town treasurer, executed after the beginning of the official term, which after reciting the period of such term, is on condition that he shall faithfully account for and pay over all moneys by him received, are liable thereon for moneys received by him during such term, prior to as well as after the execution and acceptance of the bond." *Attleborough* v. *Hatch et al.,* 97 Mass. 533.

The fact that the money paid by Abbott in 1877, was paid upon orders drawn by the town officers for that year, signifies nothing so far as the application is concerned; the fact that he paid the money to creditors of the town, whose debts might have accrued in 1877, does not in any way give such payment the effect of an application upon the claim accruing in favor of the town against him during that year.

It operates as a general payment to the town all the same as though he had paid it on an old debt. *Langdon et al.* v. *Bowen,* 46 Vt. 512; *St. Albans* v. *Faily,* Ib. 448; *Sanborn* v. *Deerfield,* 2 N. H. 251; Dillon Munic. Corp. s. 82, and notes.

*A. M. Dickey & Son* and *Clarence H. Pitkin,* for the defendants.

Parol evidence in relation to the ensealing of the instrument was admissible. 1 Greenl. s. 284; Whart. Law of Ev. s. 927. Without a seal the instrument is not a bond. *State* v. *Thompson et al.,* 49 Mo. 188; *Clinton* v. *The People,* 66 Ill. 501. It follows that no recovery can be had upon it as a bond.

Selectmen have only such powers as are conferred upon them by statute or delegated to them by the town. *Middlebury* v. *Rood,* 7 Vt. 125; *Griswold* v. *North Stonington,* 5 Conn. 367; *Cabot* v. *Britt,* 36 Vt. 349.

No statute gives them special authority to require a bond of the town treasurer. Such authority is not included in the general powers given by s. 45, c. 15, Gen. Sts., because the requiring of the bond is not a duty required by law of the town, and is not a matter of common or ordinary business of the town contemplated in the first clause of that section.

The bond, required by the selectmen under color of their office when they had no authority to exact it, is void. *Churchill* v. *Perkins,* 5 Mass. 541; *Benedict* v. *Bray,* 2 Cal. 251; *United States* v. *Tingey,* 5 Pet. 114; *Woolwich* v. *Forrest,* 2 N. J. L. (1 Penn.) 118; *Caffrey* v. *Dudgeon et al.,* 38 Ind. 512; *Lyon* v. *Ide,* 1 D. Chip. 46; *Probate Court* v. *Matthews,* 6 Vt. 269.

Abbott was town treasurer for successive terms, and the other defendants are sureties on his official bond for the last term. These sureties not liable for this sum. *Vivian* v. *Otis et al.,* 24 Wis. 518; *Bissell* v. *Saxton et al.,* 66 N. Y. 55; *Myers* v. *The United States,* 1 McLean, 493; *Farrar & Brown* v. *The United States,* 5 Pet. 372; *The United States* v. *Eckford's Exrs.,* 1 How. 250; *County of Mahaska* v. *Ingalls,* 16 Iowa, 81; *Bessenger* v. *Dickerson,* 20 Iowa, 260; *Thompson* v. *Dickerson,* 22 Iowa, 360; *The Governor* v. *Gibson,* 14 Ala. 326; *Boring et als.* v. *Williams, Treas.,* 17 Ala. 510; *Warren* v. *Wilson,* 16 N. J. L. (1 Harr.) 110; *Patterson* v. *Freehold,* 38 N. J. L. (9 Vroom.) 256; *State* v. *Sooy,* 39 N. J. L. (10 Vroom.) 539; *Hatten* v. *Lane,* 43 Texas, 279; *Rochester* v. *Randall,* 105 Mass. 295.

The opinion of the court was delivered by

REDFIELD, J.   This action is debt upon an official bond of the defendant Abbott as town treasurer of the plaintiff town ;   and purports to have been executed by said Abbott as principal, and the other defendants as his sureties.

The bond declared upon is dated, and purports to have been executed on the 16th day of March, 1877 ;   but the report finds that it was in fact executed in December, 1877.   The bond names the offices of Abbott ; and the signers covenant that he "shall faithfully execute the offices of treasurer and trustee, to which offices he was duly elected for one year, accounting for all moneys that shall come into his hands," etc.   We thinki f the bond was otherwise well executed, the obligors would be liable to respond in damages for all malfeasance or misfeasance in office, by Abbott during his official term ;   "and account for, and pay over, all moneys received by him during such term, prior, as well as after, the execution and acceptance of the bond."   *Attleboro* v. *Hatch*, 97 Mass. 533.

II.   The report states that the "sureties signed said instrument in December, 1877 ; that it then bore no seals ;   that the sureties never attached any seals to their signatures, nor "authorized any person to affix them."   It is urged by the plaintiff, that the sureties by their relation to Abbott, and the manner of the transaction, authorized him to affix proper seals, and deliver the instrument as a completed bond.   But the *fact* found, and in the record, is, that "the sureties authorized *no* person to affix seals to their signatures."

The sureties testified that they understood, when they signed the instrument, that it was a bond executed to secure the faithful discharge of said Abbott's official duties as treasurer, for the then current year ;   and the instrument recites that it "is sealed with our seals."   This is *evidence* tending to show that the sureties, when they put the instrument into Abbott's hands, signed by them, expected that Abbott would make it a sealed instrument when delivered, and such as, on the face of the paper it was represented to be, when they signed it.   But this is substantially

negated in the report by the finding that "they authorized no person to affix seals to their signatures." The seal converts a simple contract into a specialty; and makes it one of different grade and character. And it is as much forgery to convert a simple contract into a specialty without authority, as it is to affix the signatures which create the contract.

The plaintiff's counsel are right in their law, that if the sureties induced the selectmen to receive and treat this paper as a sealed instrument, and rely upon it as such, they are estopped now from calling it in question. But there are no *facts* stated in the report that would estop the sureties from insisting that their liability is to be measured and determined by the instrument as *they made it.* It is said they should be held liable, because they put it in the power of Abbott to deliver it to the selectmen as a bond duly executed and sealed. It was, alike, in the power of Abbott to change the tenor of the instrument, and add new stipulations, and increase the liability of the signers. Whether Abbott had done this, or changed the character of the instrument, by affixing seals without authority, the signers who did not consent to the alterations have no liability under it ; it becomes entirely vitiated as to them. It has been held in this State that, if the holder of a note procure it to be witnessed after it had been executed and delivered, though by a person who saw it signed, it so changes the character of the note, that by such alteration without authority of the signer, it becomes vitiated and void. And we think on the facts reported, this instrument was substantially changed in legal character after it was executed by the sureties without their consent, and is, therefore, as to them *not their deed.*

III. The report states as to item 1 : " Balance in the treasury March 1st, 1877, $917.92; that just before the March meeting 1877, the auditors examined Abbott's account as treasurer, and found there was, or should be in his hands to balance his account, the sum of $917.92. That no money was shown to the auditors ; and that in fact Abbott had no money that could be identified as belonging to the town in his hands, and had in point of fact, before such settlement, used in *his own business the money repre-*

9

sented by such balance." This balance due from Abbott to bal-
ance the treasurer's account, was not on hand on the 1st of March,
1877, but had been appropriated by him to his own use, before
that time ; hence there was no perversion, or devastavit, as to this
balance during the official term, covered by this bond.     And,
aside from this "balance" Abbott paid out more money for the
town during the year than he received.    Abbott having charged
himself with the "balance," on hand, as found by the auditors;
and having induced the auditors to find and state such balance as
being in his possession, would, himself, be estopped from averring
now the contrary.     But as to the sureties, that deficit must stand
as the laches of the treasurer prior to the first of March, 1877.
The result is that the judgment of the County Court is affirmed
as to Abbott, and reversed as to the sureties ; and judgment that
they recover their costs.