THOMAS F. HAMMOND, Assignee in Bankruptcy of SAMUEL FORD, *v.* JOHN BUCKMASTER.

The plaintiff and defendant entered into an agreement, by which the plaintiff was to manufacture into cloth for the defendant a quantity of wool, the cloth to be delivered to the defendant and to become his property as soon as it was manufactured, and the defendant agreed, that he would send the cloth to market, and cause it to be sold, and would pay to the plaintiff, for the purpose of defraying the expenses of manufacturing, one third of the money received in advance for the cloth, upon its being consigned to market, and would also pay to the plaintiff the residue of the money obtained for the cloth, after deducting

forty four cents for every pound of wool so delivered by the defendant, and the interest and cost of freight. And it was held, that a breach of the contract on the part of the plaintiff, in converting to his own use a portion of the cloth manufactured, previous to a demand by him upon the defendant for the money, would not discharge the defendant from his liability to pay to the plaintiff one third of the money received in advance upon the consignment of the cloth for sale; but the defendant must recover compensation, by a cross action, for such conversion of the cloth by the plaintiff.

A contract cannot be rescinded by one party, for the default of the other, unless both parties can be placed in the same situation, in which they were before the contract was made.

ASSUMPSIT. The plaintiff declared in substance, that Ford, the bankrupt, previous to his bankruptcy, agreed with the defendant, that he would manufacture into cloth for the defendant a quantity of wool, and would deliver the cloth to the defendant, from time to time, as it should be manufactured, and that the defendant agreed, among other things set forth in the declaration, that he would send the cloth to market, and cause it to be sold, and would pay to Ford, for the purpose of defraying the expense of manufacturing, one third of the money, which he should receive in advance upon the consignment of the cloth to market, from time to time as he should receive the same, and would also pay to Ford the residue of the money received by him for the cloth, after deducting forty four cents for every pound of wool furnished by the defendant to Ford to be manufactured under the contract, and the interest and cost of freight; and the plaintiff averred performance of the contract on the part of Ford, but alleged, that the defendant had not paid to Ford, or to the plaintiff, any part of the money received by him in advance upon the consignment of the cloth to market, nor any part of the avails of the cloth. Plea, the general issue, and trial by jury, May Term, 1849,—KELLOGG, J., presiding.

On trial the plaintiff gave in evidence an agreement in writing, executed by the defendant and Ford, dated September 23, 1841, which was in these words :—

"This agreement, made by and between John Buckmaster of 'Shrewsbury in the county of Rutland and state of Vermont, party 'of the first part, and Samuel Ford of Woodstock in the county of 'Windsor and state of Vermont, party of the second part, witnes-

' eth ;—That said John Buckmaster agrees to furnish and deliver to
' the said Samuel Ford, at his factory in Bridgewater in the county
' of Windsor, about 12,000 lbs. of wool, which the said John has
' now on hand,—said wool to be delivered from time to time at the
' said factory, on demand, in sufficient quantity to keep the said fac-
' tory in full operation, until the whole of said wool shall be deliv-
' ered. And the said Samuel Ford agrees to manufacture said wool
' into cassimeres as soon as possible after manufacturing wool that is
' now on hand ; and the said Samuel doth farther agree to deliver
' all the cassimeres, manufactured from the wool aforesaid, to the
' said John, at the said factory, from time to time, when finished and
' ready for market ; and the said Buckmaster is to take said cassi-
' meres and send them to Boston market and have them sold, and is
' to pay over to said Samuel, for manufacturing the same, the bal-
' ance of money obtained for said cassimeres, after deducting forty
' four cents for each and every pound of wool delivered as aforesaid,
' together with interest after ninety days from the delivery of the
' first load of wool, and after deducting freight on goods to market ;
' —and said Buckmaster is to consign said goods to some responsi-
' ble commission merchant to be sold any time within twelve months
' after the delivery of said wool, at the option and direction of said
' Samuel ;—and the said Buckmaster shall pay to the said Samuel
' one third of the advance money, received on said cassimeres, from
' time to time as delivered in market, for the purpose of defraying
' the expense of manufacturing said cassimeres ;—and said Buck-
' master has a right, before sending said cassimeres to market from
' time to time to take from the same one ninth part of the number
' of yards so finished, of an average quality of said cassimeres, at
' ninety cents per yard ;—and said Buckmaster is to pay interest on
' all cassimeres he receives at ninety cents per yard, as aforesaid,
' after ninety days from the delivery of the first load of wool. And
' said Samuel farther agrees to manufacture for the said Buckmas-
' ter, as aforesaid, about 5000 lbs. more wool, which is now owned
' by Levi Finney and John and Joseph Kinsman, or either of said
' lots of wool, by the said Buckmaster's giving the said Samuel no-
' tice in two weeks from this date."

The plaintiff then gave evidence tending to prove a breach of the
contract on the part of the defendant; and the defendant introduced
rebutting testimony, and also gave evidence tending to prove, that
Ford, previous to making any demand upon the defendant for the
money, converted to his own use a portion of the cloth manufac-
tured from the defendant's wool.

The court charged the jury, that if they found, that Ford, previ-
ous to calling upon the defendant for the money received by him in
advance upon the consignment of the cloth to market, had converted

to his own use a portion of the defendant's cloth, without his consent, it would be a breach of the contract on the part of Ford, and would discharge the defendant from his liability to pay the advance money to Ford.

Verdict for defendant. Exceptions by plaintiff.

*Tracy, Converse & Barrett* for plaintiff.

It does not appear, how much of the defendant's cloth was taken by Ford, nor that it was sufficient to meet the one third of the " advance money," and the court cannot presume it. If Ford had taken one yard of cloth manufactured from the defendant's wool, without his consent, would that have released the defendant from the payment of any advance money? Such a position cannot be sustained; yet it is believed such is the principle laid down in this case. The disposition of the cloth was not a breach of the contract; it was at most a tort, and could no more affect the contract, than the conversion of any other property. If, however, it was a breach of the contract to *deliver*, it was not such as exonerated the defendant from the fulfilment of the contract, on his part, to pay what was due after deducting what Ford had received. It is a general rule, that, after a partial execution of a contract, it cannot be rescinded, but the party injured by a non-fulfilment must resort to his action on the contract. 1 Sw. Dig. 400. *Stevens v. Cushing*, 1 N. H. 17. *Lucy v. Bundy*, 9 N. H. 298. *Cooke v. Munstone*, 4 B. & P. 350. Ib. 263, notes. *Hunt v. Silk*, 5 East 449. 2 Kent 480. Chit. on Cont. 352 *a*.

*E. Hutchinson* for defendant.

The plaintiff's claim is one for special damages, requiring a special declaration; and the plaintiff has declared specially, averring Ford's performance of the contract, upon his part, and that all the cloth was delivered to the defendant, according to the contract. The whole ground of the exceptions is, that the court instructed the jury, that the plaintiff was not entitled to recover special damages against the defendant, for the non-performance of that part of his contract in reference to the payment of the advance money, without proving the allegations of performance on the part of Ford, as set forth in the declaration; or, in other words, that the defend-

ant was not bound to carry out the contract by making farther advances under it, after Ford had put it out of his power to fulfil on his part. We cite no authorities in support of that ruling of the county court, for it is among the first rudiments of the law of assumpsit, as laid down in every elementary treatise. It was the stipulation of Ford, to deliver to him, as fast as manufactured, all the cloth manufactured from his wool, which induced the defendant's promise to pay to Ford the one third of the advance money, and constituted in part and was the most material part of the consideration of that promise. They were not independent but mutual and dependent stipulations. It was not Ford's *promise,* but the actual delivery of the cloth, was to bind the defendant to pay him the advance money.

The opinion of the court was delivered by

BENNETT, J. The object of this suit is to recover for a certain portion of *advance money,* as it is called, which had been received by the defendant under a certain written contract between Ford and the defendants, which is made a part of the bill of exceptions. It is not necessary to allude to the various provisions of this contract. In *Buckmaster* v. *Mower et al.,* 21 Vt. 204, this same contract was before the court, and it was there held, that the cloth, when manufactured by Ford, became the sole property of the defendant, and that Ford's rights rested altogether in contract; and among those rights the defendant assumed to pay to Ford one third of the money, which he should receive from the consignees, *in advance,* upon the cloth which might be sent to them.

The plaintiff's claim was for one third of such advance money. The court, among other things, told the jury, that if it appeared, that Ford had, previous to the call for the advance money, converted to his own use a portion of the defendant's cloth, without his consent, it would be a breach of the contract on the part of Ford, and would discharge the defendant from his liability to pay *advance money* to him under the contract. Under this instruction, if the jury found, that Ford had failed to deliver to the defendant any portion of the cloth manufactured by him, however small, but had converted it to his own use, the defendant would have been absolved from all liability to pay over any part of the *advance money,* which

he might have received, whatever the sum may have been in his hands.

If the charge of the court can be sustained, it must be upon the ground, that a breach of the contract on the part of Ford gave to the defendant a right to repudiate it. But it could not have that effect. The general rule of law is, that a contract cannot be rescinded by one party, for the default of the other, unless both parties can be placed *in statu quo*, as before the contract. In the present case the contract had been in part executed, and each party had received a partial benefit from the contract, and the parties could not be placed *in statu quo*. The agreement in this case must stand, and the defendant must perform his part of it; and if there has been a breach of the contract by the other party, he must seek a compensation in damages of such party, by a cross action.

Though it is probable the merits of the controversy did not turn upon this point in the charge, yet we cannot assume, upon this bill of exceptions, that this was not the ground, upon which the jury proceeded, in returning a verdict for the defendant. It might have been; and as we think there was error in this part of the charge, the judgment of the county court must be reversed.