Sartwell v. Horton.

EDWARD L. SARTWELL v. ROLLIN V. R. HORTON.

*Arbitration. Recovery of money paid on an unfounded claim.*

Parties agreed to submit certain matters of difference to arbitrators who, after hearing and consultation, informed the parties they had agreed, but that neither party was to be bound by their determination, and would be under no obligation to abide by it, and then announced the conclusion to which they had arrived. *Held* that their conclusion was merely advisory, and of no binding force as an award.

Money may be recovered back which is paid in discharge of an alleged claim which is fictitious and false, and known so to be to the party making the claim, and who induces the payment by menaces, duress, or taking an undue advantage of the other party's situation.

ASSUMPSIT. The cause was referred. The principal claim of the plaintiff was for $ 465.84, in reference to which the referees reported the following facts.

About sixteen years prior to 1853, the plaintiff and defendant entered into an agreement, by which the plaintiff was to take the charge of the defendant's grist-mill, as the miller, and receive one-half of the proceeds or tolls, and the defendant the other half. The plaintiff, thereupon took the charge of said mill, and proceeded to discharge the duties of miller, and so continued to do until sometime in February, 1853. Up to this period there was a perfectly good understanding, and no suspicion existed on the part of either that there was anything wrong in the dealings of the other.

In February, 1853, the plaintiff entered into an agreement, by which he was to take charge of a grist-mill in Hydeville, and leave the defendant's mill. After this fact came to the knowledge of the defendant, he professed to have suspicions that the plaintiff had not been dealing honestly with him, and had not given him his just share of the tolls; and that he had taken his (the defendant's) grain without authority, and disposed of, or appropriated it to his own use; and procured a writ in trover to recover the value of the grain so taken or withheld. After having procured said writ he went to the mill where the plaintiff was, and after looking it over, told the plaintiff to get certain notes which the plaintiff had against the defendant, amounting, in all, to between six and seven hundred dollars, and go up to the defendant's house and settle, which the plaintiff did. They went into a room by themselves, and the defendant fastened the door, and then told the plaintiff that he had ascertained

that the plaintiff had stolen his grain and that of everybody else; and that he could prove it by various individuals; and that he had got a county court writ in his pocket against him for it. The plaintiff got up to leave, but the defendant told him he should not. The plaintiff took the notes above referred to, and told the defendant to take what he a had mind to from them. This he declined to do, saying that somebody else must say how much he was to have. The plaintiff was a simple-minded man, and during this interview was alarmed and excited. It was finally proposed by one of them to leave the matter to others to say what should be done in the matter, and N. H. Eddy, Wm. P. Abbott and H. N. Skeels were selected as the persons to whom the subject was to be submitted. This interview was on Saturday. On the Monday following, (being the 28th of February, 1853,) the plaintiff, defendant, and the above named persons, met at the defendant's house. The parties agreed to introduce no testimony; the plaintiff took no further part in the business of the hearing; the defendant made a statement, and the arbitrators retired to decide. After they had agreed, they called in the parties and told them that they had agreed, but that neither party were to be bound by their determination, and would be under no obligation to abide by it. The plaintiff said he would hear what they had to say, and then determine. They then stated that they had concluded that the plaintiff ought to pay the defendant the sum of $465.84. The plaintiff then said he had offered defendant more than that, (referring to his offer to have him take what he pleased from the notes.) The plaintiff then produced his notes, and the defendant figured up the amount, deducted the $465.84 and paid plaintiff the balance, and took them up.

There was no testimony introduced before the arbitrators, and they had no knowledge that the plaintiff had done any act that had affected injuriously the custom, business or reputation of the mill; and they all testified that they did not know but the plaintiff was as attentive and faithful to the business of the mill as any other man. They knew that the mill did not do as much business as it had formerly done; but other mills had been erected in the vicinity; the business of the place had diminished; the store there had been broken up,—there was consequently less to call customers there; the mill was getting old; and what effect these causes had

Sartwell v. Horton.

produced upon the business of the mill, the arbitrators could not tell.

The referees further reported that they found that this claim of the defendant had no foundation in fact, and would not have been set up if the plaintiff had not determined to leave the defendant's mill; and they submitted to the court, whether, upon the facts reported, the plaintiff should recover said sum of $465,84 with the interest thereon.

The county court, September Term, 1855,—PIERPOINT, J., presiding,—rendered judgment for the plaintiff, to recover the balance reported in his favor, together with said sum of $465.84, and the interest thereon.    Exceptions by the defendant.

*A. A. Nicholson* and *S. H. Hodges* for the defendant.

The award was valid, notwithstanding the opinion expressed by the arbitrators; *Ennos* v. *Pratt*, 26 Vt. 630.

The referees have found no·such misconduct in the arbitrators or the defendant, as should invalidate it at law; Caldwell on Arbitrations, 208 &c. (94;) *Emerson* v. *Udall*, 13 Vt. 477 ; *Howard* v. *Puffer*, 23 Vt. 365.

Neither can it be inferred from the judgment of the county court, which was, in effect, *pro forma*; *Bartlett* v. *Churchill*, 24 Vt. 218.

The payment by the plaintiff was a voluntary one, made upon demand, and with full knowledge of all the facts ; *Centre Turnpike Co.* v. *Smith*, 12 Vt. 212 & cas. cited; *Brisbane* v. *Davis*, 5 Taunt. 144; *Clarke* v. *Dutcher*, 9 Cow, 674; *Pangburn* v. *Bull*, 1 Wend. 345.

*Briggs & Hyatt* for the plaintiff.

There was no consideration for the plaintiff's surrender of his notes, as the referees have found that the defendant's claim had no foundation in fact. His claim was a fraud upon the plaintiff, sought to be enforced by duress and threats ; *Farnam* v. *Brooks*, 9 Pick. 212; Chitty on Contracts 193.

The opinion of the court was delivered, at the circuit session in June, by

IshAM, J.    The exceptions in the case are confined to the claim

of $465.84, for which a recovery was had on the count for money had and received.

We are satisfied that, in the prosecution of this suit, the plaintiff is not concluded by the matter relied upon as an award of arbitrators. The opinion expressed by them, was given upon the express condition that neither party should be bound by it. It was intended to be, and was, in fact, merely advisory; and as such, it has no binding force. In the case of *Ennos* v. *Pratt*, 26 Vt. 636, an ordinary submission and award was made, and the arbitrators intended to make a final determination of the matter in controversy. Their opinion in that case that, as their award was not in writing, it was not obligatory, had no effect upon its conclusiveness. It is a different case from this, as in that case they discharged the duties of arbitrators, but in this they refused to act as such.

On the merits of this case, we think that the plaintiff is entitled to recover the money for which this judgment was rendered, as having been paid under circumstances which do not entitle the defendant to retain it. We make no question as to the soundness of the general rule, "that money paid under legal compulsion, or where there is *bona fides*, and money is paid with full knowledge of the facts, though there be no debt, still it cannot be recovered back;" *Marriott* v. *Hampton*, 7 Term. 269; 2 Smith's Lead. Cas. 335. But if there is a want of good faith in making the claim, and the party is exacting what was not supposed to be a right, and there be duress, or any undue advantage taken of the parties' situation, or if, under the terror of inceptive legal proceedings, fraudulently instituted, money has been paid, the party paying it may recover it back in this form of action; 2 Smith's Lead. Cas. 337; *Pitt* v. *Coomes*, 2 Ad. & El. 459, 1 Selw. N. P. 89. The referees in this case have found the fact and have stated in their report, that the defendant's claim in relation to grain which the plaintiff was charged with having taken, and also the claim in relation to injuries to the grist mill, had no foundation, in fact, and would not have been set up, if the plaintiff had not determined to leave the defendant's employment. This must be regarded as a distinct finding, that the claim was false, and known to be such by the parties when it was made, and when this amount was deducted from the plaintiff's notes. That fact alone brings this case within the prin-

ciple decided in the case of *The Duke of Cadaval* v. *Collins*, 4 Ad. & Ell. 858. That was an action to recover money paid to the defendant after the plaintiff had been served with process. The fact was found by the jury, that the defendant knew that he had no claim upon the plaintiff when he sued out his writ. COLERIDGE, J., observed that "no case has decided that when a fraudulent use "has been made of legal process, both parties knowing throughout "that the money claimed was not due, the party paying under such "process is not to have the assistance of the law." PATTERSON, J., observed that "the jury concluded that the defendant knew that "the debt did not exist, and that he used the process colorably. "To say that money obtained by such extortion cannot be recov- "ered back would be monstrous." From the mere fact that the party knew that he had no just claim, the court declared the suit to have been fraudulently commenced, and the money obtained by extortion. In *Colwell* v. *Pedan*, 3 Watts 327 it was held that a distinction existed between those cases where a legal remedy has been used as an instrument of extortion, and those in which it has been used *bona fide*, to enforce what was supposed to be a right. In all the cases where a recovery was allowed, good faith existed in making the claim; the party supposed he had a right. But in this case, that fact is expressly negatived by the finding of the referees. Payments made under such circumstances, are not those voluntary payments which preclude the party from legal redress. The application of that principle is made to cases where the party is acting in good faith, and the money is taken on a supposed right.

There are other circumstances in the case which give additional weight to the plaintiff's right to recover this money. The transaction at the defendant's house, when the claim was first made, and the plaintiff was forbidden to leave the room, falls but little short of actual violence. The plaintiff, the referees state, is a simple-minded man, and on that occasion became excited and alarmed; so much so, as to induce him to offer the defendant his notes, with liberty to take such sum from them as he saw fit. It will hardly be contended that if money had then been paid, or this amount had then been deducted from the notes, but that the plaintiff would be entitled to legal redress; and it would seem that the plaintiff, by

Sartwell v. Horton.

refusing then to take it, and requiring that others should state the sum which should be paid to him, was conscious of that result.

But it is insisted that as that transaction took place on Saturday, and the money was not paid until the next Monday, that the case is relieved from those considerations. But we think that conclusion does not follow. A similar delay existed in the case from 4 Adol. & Ell. 858, but it had no effect against the fact that the money was exacted and paid on a claim which the party knew had no existence in fact. It is also to be observed that in that case, the money was not paid until the next day after the party paying it had been discharged from arrest; so that in that case as well as in this, the money was paid, not under an actual arrest, but under the apprehension and fear of one. If, in that case, the money could be recovered back, when, in his negotiations, the party paying the money was assisted by friends and professional advice, it surely should be recovered in this, where the case is destitute of any such considerations.

It is impossible to see upon what just ground the opinion of the persons named as arbitrators was given. Their own testimony in this case shows that they could not have been influenced by any proper considerations involved in the case. In any event, that proceeding will not make a claim where none existed before, or render it proper for the defendant to retain the money when it could not be retained independent of that transaction. If the fact that the defendant supposed that he had a just claim had not been expressly negatived, there would have been much more difficulty in permitting the plaintiff to recover. But that fact is negatived in the case. There is no propriety, therefore, in saying that a claim was created under that fraudulent use of legal process, the personal duress of the plaintiff, or by the very exceptionable proceeding before the persons named as arbitrators. That matter, so far from alleviating the facts in the case, only aggravates the circumstances under which that amount was taken from the plaintiff. It can be regarded in no other light than as an attempt to give to a transaction fraudulently conceived, and fraudulently prosecuted, the form of a legal proceeding.

The judgment of the county court is affirmed.