EBEN J. ORMSBEE *v.* M. G. HOWE.  SAME *v.* GEORGE LANE.

*Note Given for Fraudulent Claim Void.    Consideration.*

A note given to settle a fraudulent claim, one wholly without foundation, and known
   by both parties to be such, under threats of suit, is without consideration and
   void ; and cannot be collected by a third party, though purchased before due,
   when such party was not only put upon inquiry, but also, acted in bad faith in
   buying, he being a general purchaser of the payee's notes and knowing his dis-
   honest methods in obtaining them.

HEARD by the court, September Term, 1880, Rutland County,
Ross, J., presiding.  Action, assumpsit on a note, with the com-
mon counts added ; plea and replication.  Both cases were sub-
stantially alike.  The court rendered judgment for the plaintiff
on the following facts :   One Healey was the real owner of the
note.

$95                                   SHARON, Vt., Jan. 29th, 1877.

On the first day of August next, for value received, I promise to pay
O. Preston or bearer ninety-five dollars with use, payable at the Royalton
Nat. Bank of Royalton, Vt.

P. O. Sharon, Vt.                                   M. G. HOWE.

The execution and delivery of the note were admitted.  On the
back was endorsed : "Pay A. W. Kenney Cash. or order for collection
for First National Bank Danville New York.

JN. FAULKNER JR., *Cashier.*"

The defendant claimed the endorsement restricted the negotia-
bility of the note.  The plaintiff was allowed to show against the
defendant's exception, by said Healey, that he deposited the note
with the First National Bank, Danville, N. Y. for collection, and
that the endorsement was made, and note forwarded for that pur-
pose and returned to him unpaid.

It appeared that O. Preston, the payee of the note, is the man-
ufacturer of white wire cable clothes line, and that an agent by
the name of Murray procured by fraud the defendant to sign an
order January 1, 1877, though the order is dated January 1, 1876,
the defendant understanding that he was only signing a contract
to become the agent of said company to sell said wire on commis-

sion. Said order was signed in duplicate and one kept by the defendant, who did not read the same.

On the day of the execution of the note, another agent of the company appeared and demanded payment for the wire, 2,000 feet of which with 100 feet extra was then in the depot at Sharon for the defendant.

The defendant denied his liability for the same, and claimed he had not signed the order which was produced; but on getting his duplicate found it corresponded with the one presented.

He still refused to pay, claiming he was defrauded into signing it. The agent threatened suit. The result was the defendant went with said agent to the depot and found the wire was there, and how much the freight was, and the same was deducted from the price of the wire and the note given.

The court found that the note was obtained by the production of said order and threats that a suit would be brought upon it.

The wire is manufactured alone by said company by a patent process and patent machinery, and is a valuable article for a clothes line. The defendant has never taken said wire from the station, nor exercised any control over it; but the same remains there addressed to him, and so that he could take it if he chose; and her efused to pay the note when notified by the Bank of Royalton, and had no funds there with which to pay the same. The said Healey purchased about $1,200 to $1,500 of such notes taken in the State of Vermont and paid seven-eighths their face value in cash. He purchased the note in question before it became due. The company, consisting of O. Preston & Son, only agreed that the makers were pecuniarily responsible, and were to refund the money, or replace by other notes, if Healey should fail to collect any of said notes through the pecuniary irresponsibility of any maker. There was no other condition to said purchase. Healey knew O. Preston & Sons; knew they were manufacturing and selling said wire, and that they manufactured 15,000 to 20,000 feet per day, and that at that time were introducing the same by sales by agents. He had pnrchased $10,000 or $12,000 of such notes before, which were given in the State of New York, and had collected the same without suit with a single exception. The court did not find said discount greater than would ordinarily be made on notes so scattered, and where the makers resided so far from the payee.

The defendant was allowed to show against the plaintiff's exceptions by one H. C. Potter, that he had known said Healey since 1870; and that in November, 1875, he was at Hawesville, the place of the manufacture of said wire cable clothes line, and was

shown over the works by O. Preston and said Healey, and was told by them that they were employing agents to obtain orders for said wire cable, and wanted to employ the witness to follow after such agents and settle for the orders as best he might, by taking notes or compromising; and that said Healey for this purpose offered said witness $100 per month, which he declined. The said Healey testified that he had no other interest in said note than that he acquired by the purchase of the same, and the court so find.

The court, from the testimony of said Potter, find that said Healey had such knowledge in regard to the way in which the orders and notes for said wire were obtained, that he might reasonably expect that some of them were obtained in the manner these were.

*J. J. Wilson*, for the defendant, Howe, and *J. K. Batchelder*, for the defendant, Lane.

The note having been procured by such threats, and with such knowledge, is without consideration. *McKenly* v. *Watkins*, 13 Ill., 140; *Fogs* v. *Hildreth*, 10 Allen, 76; *Pitkin* v. *Noyes*, 48 N. H., 304; *Wade* v. *Simion*, 2 Gr. & Scott, 548; *Grow* v. *Bevan*, 3 Starkie, (3 E. C. L.,) 134; *Garvis* v. *Sutton*, 3 Ind. 222; *Holcomb* v. *Stimpson*, 8 Vt., 141; Chitty on Con., 11 Am. ed., vol. 1, p. 47, note; Chitty on Con., old ed., 30 and 33; 10 How. 243; 32 Vt. 559, 275; 36 Vt. 375; 60 N. Y. 498; 47 Vt. 243; 5 B. & A. 117; 4 East, 455; 11 M. & W. 641; 4 Allen, 56; 15 Conn. 404.

The settlement or forbearance of a groundless claim—that is, a claim wholly without foundation, is no consideration for a promise. *Lloyd* v. *Lee*, 1 Stra. 99 (case of forbearance); *Palfrey* v. *Railroad Co.*, 4 Allen, 56; *Kidder* v. *Blake*, 45 N. H., 530; *Sullivan* v. *Collins*, 18 Iowa, 228; *Knotts et al.* v. *Ruble*, 50 Ill., 226; *Wilbur* v. *Crane*, 13 Pick., 284; *Crosby* v. *Wood*, 6 N. Y., 369; *Newell* v. *Fisher*, 2 S. & M. (19 Miss.), 431; *Long* v. *Towl*, 42 Mo., 545; *Farnham* v. *O'Brion*, 22 Me. 475; *Haynes* v. *Thom.*, 28 N. H., 386; *Lang* v. *Johnson*, 24 N. H., 302; *Farrington* v. *Brown*, 7 N. H., 271; *Mullholland* v. *Bartlett*, 74 Ill., 58; *Foster* v. *Metts*, 55 Miss., 77; 74 Ill., 58; 55 Miss., 77; 2 Wis., 5. The plaintiff is not a *bona fide* holder of the note.

*Roth & Co.* v. *Colvin*, 32 Vt. 125 ; 43 Vt. 125 ; 14 Vt. 235 ; 44 Vt. 386.

*Ormsbee & Briggs* and *Prout & Walker*, for the plaintiff.

Threats to sue a claim or demand occur every day, but that does not amount to duress in a legal sense. Duress is an actual or a threatened violence, or restraint of a man's person contrary to law, to compel him to enter into a contract or to discharge one. *Holcomb* v. *Stimpson*, 8 Vt. 141 ; *Paris* v. *Dexter*, 15 Vt. 379.

The note was valid in the hands of Preston. *Robinson* v. *Gould*, 11 Cush. 55 ; *Plumb* v. *Niles*, 34 Vt. 234.

Healey is entitled to all the rights of a *bona fide* holder. The broadest effect that can be given to the peculiar finding based on the testimony of Potter is that Healey had certain knowledge as to the way other orders and notes were proposed to be obtained years before, from which he might reasonably expect that some of the notes purchased in 1877, were obtained in the manner these were. " Some of them" is very indefinite. It does not reach to all of them, nor does it necessarily include the note in suit. The facts found fall far short of showing that Healey-had knowledge of anything affecting the validity of this note, or even that he was put upon inquiry.

And the decisions of this court in *Roth* v. *Colvin*, 32 Vt. 125, and other cases, that want of caution or failure to inquire is sufficient to charge a purchaser of commercial paper with the consequences of actual notice, is contrary to the law of negotiable paper as now well settled elsewhere ; is dangerous and unsatisfactory ; and should be reversed. *Goodman* v. *Harvey*, 4 Ad. & E. 870 ; *Goodman* v. *Simonds*, 20 How. U. S. 363 ; *Raphael* v. *Bank of Eng.*, 84 E. C. L. 161 ; *Carlon* v. *Ireland*, 85 Ib. 765 ; *Hamilton* v. *Marks*, (Mo.) 16 Am. L. Reg. 39 ; *Magee* v. *Badger*, 34 N. Y. 247 ; *Bank* v. *Hoge*, 35 N. Y. 65 ; *Phelan* v. *Moss*, 67 Pa. St. 59 ; *Johnson* v. *Way*, 27 Ohio St. 374 ; *Burt* v. *Scribner*, 11 Conn. 388 ; *Lake* v. *Reed*, 29 Iowa 258 ; *Smith* v. *Livingston*, 111 Mass. 342 ; *Miller* v. *Finley*, 26 Mich. 249 ; 4 Ga. 298.

The opinion of the court was delivered by

VEAZEY J. The plaintiff, an attorney, brought these suits in his own name in behalf of one Healey, who purchased the notes before due of one Preston, the payee. Preston by fraud obtained orders of the defendants respectively for a lot of wire clothes line, and after filling the orders according to their terms, demanded through an agent payment of the defendants. They at first refused on account of the fraud, not knowing until the demand that they had signed such orders, and not in fact having signed them understandingly, and having been induced to sign them through fraud ; but the orders being produced and suits threatened, they gave the notes in question. Where a claim is wholly without foundation and known by the parties to be such, a promise to pay it is without consideration. There is in such a case nothing to be settled, therefore the settlement is no consideration for the promise. See authorities cited in defendant's brief.

This case discloses a scheme to get this wire clothes line on to people in a fraudulent way. It was first to get an order from a man by the use of all the fraud necessary for that purpose, and then by confronting him with the order, and by threats of suit get a settlement. The scheme as originally concocted, extended through to the obtaining of the note. The order being obtained by fraud, no debt was created. There was nothing to found a settlement or compromise upon. Preston had no right to fill the order by forwarding the goods, and his doing so did not change or affect the transaction. That was a part of the scheme. The scheme was to bring about a disposition of his goods in the form of a sale by the use of fraud. The iniquity of the conception is carried out in the execution without discovery by the other party until the demand for settlement. The fact that the defendant yields to the demand and threats, and promises to pay, or gives a note with knowledge of the fraud, cannot help the promissee, because the note is but the fruit, the outgrowth of Preston's original fraudulent conception and act. His soiled hands have not thereby become clean. The compromise of a doubtful right is a sufficient consideration for a promise, and it does not matter on whose side the right ultimately turns out to be. But where the promise is ex-

torted by threats to sue on a claim which the party knew was
wholly unfounded and which he was making for the purpose of
extorting money, the contract is utterly void. *McKinley* v. *Wat-
kins*, 13 Illinois, 140, and the other cases cited by defendants.

We think the case discloses that Healey understood Preston's
methods; that he knew that Preston deliberately proposed to
practice fraud, if necessary, to get rid of his wares through the
forms of sale, and that he became a general purchaser of his notes,
knowing his fraudulent purpose and the likelihood that such pur-
pose would often have to be carried out in order to get the notes.
He was not only put upon inquiry, but we think upon the facts
found that he bought the notes in bad faith. He was not an in-
nocent purchaser under the rule as contended for by the plaintiff.
Justice SWAYNE says in *Murray* v. *Lardner*, 2 Wal. 121: "The
rule perhaps may be said to resolve itself into a question of hon-
esty or dishonesty, for guilty knowledge and wilful ignorance alike
involve the result of bad faith." To buy notes generally that
Healey knew would to some extent be likely to be infected with
fraud, was not an honest act. He practically lent himself for
a profit to Preston to enable him to carry out his fraudulent
purpose.

The judgment of the County Court in both cases is reversed,
and judgment is rendered for the defendants respectively to re-
cover their costs.