VERMONT ACCIDENT INSURANCE COMPANY *v.* JUDSON E. FLETCHER
AND EMMA J. FLETCHER.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 28, 1914.

*Mortgages—Delivery of Signed Blank——Effect—Failure to Acknowledge —Seals —Effect of Absence — Attestation — Equitable Estoppel—Persons Entitled to Assert—Reliance on Conduct—Equity—Defences—Inequitable Conduct.*

A blank form of a mortgage deed of real estate, neither sealed, witnessed, nor attested, but signed by the proposed mortgagors and by them delivered to the proposed mortgagee with authority to complete the instrument in due form, which later he did, could not be a valid mortgage without redelivery after completion.

An unacknowledged deed of real estate may be effective between the parties.

An instrument to which the law requires a "seal" to be affixed may be treated in equity according to the intention of the parties, though it has no seal.

In equity, an unwitnessed deed of real estate may be treated as evidence tending to show an agreement to execute a valid deed.

An equitable estoppel is ordinarily available only to one who acted to his injury in ignorance of the truth, and in reliance on the acts asserted to work the estoppel.

No one can successfully invoke an equitable estoppel in respect of a transaction that he himself fraudulently contrived, and so orator, having procured defendants to execute to it a sham mortgage in order thereby to deceive the insurance commissioners, cannot be heard to claim that defendants are estopped to deny the validity of the mortgage.

Both parties to a transaction may be *in delicto*, and yet not *in pari delicto* so that either is precluded from obtaining equitable relief.

Where defendants at the request of orator, and without duress or undue influence, executed to orator a sham mortgage on defendants' real estate, for the purpose of deceiving insurance commissioners,

the court properly refused to remove the cloud thereby created on defendants' title.

APPEAL IN CHANCERY, Rutland County, September Term, 1912, *Stanton,* Chancellor. Heard on the pleadings, including defendants' cross-bill, and master's report and exceptions thereto by both parties. Decree, *pro forma,* dismissing orator's bill with costs to defendants. The orator appealed. The opinion states the case.

*F. S. Platt* and *T. W. Moloney* for the orator.

*Holden & Healey* for the defendants.

HASELTON, J. This is a petition in chancery to foreclose a claimed mortgage. The facts were found by a special master. A decree was rendered *pro forma* dismissing the bill with costs for the defendants. The orator appealed.

At the times material to this case C. C. Fletcher, a son of the defendants Judson E. and Emma J. Fletcher, was president of the orator, the Vermont Accident Insurance Company, and in apparent control of its financial affairs. He owed the company $500 on one demand note and $2,350 on another. His wife, Maud L. Fletcher, owed the company $2,550 on her note which was indorsed by the defendant, Judson E. Fletcher.

The claimed mortgage deed was obtained in the following manner. President Fletcher of the company brought to his father a blank form of a mortgage deed and procured his father, Judson E., to sign it in blank and caused his father to get his mother, Emma J., to sign it in blank. No one witnessed their signatures, no seals were affixed thereto, and neither of the defendants acknowledged the instrument.

The cause of these doings was, as the master finds, that President Fletcher went to his father and represented to him that the Insurance Commissioners of the State were criticizing the officers of the company and its management because of the holding of the unsecured notes above referred to and were insisting that the notes be paid or secured; but, as the master further finds, President Fletcher did not specify any notes in making these representations and neither his father nor his mother had any actual knowledge of any other note than the

one signed by their daughter-in-law, Maud L., and indorsed by the defendant Judson E. Fletcher.

The defendants thereupon signed the blank mortgage form as above stated, and authorized their son to fill out and complete the paper in every way necessary to satisfy the Insurance Commissioners, and the authority given was not specifically limited to the note indorsed by the defendant Judson E. which was paid before the bringing of this suit. The defendants' son who, as has been said, was the president of the company, took the blank with the signatures attached and thereafter filled it out or caused it to be filled out, himself signed as one witness, procured another person to sign as a second witness, and procured a form of acknowledgement to be made and attached by a notary. He then sent the mortgage, complete in form, to one William F. Perry, of Keene, New Hampshire, who with a brother owned about half of the stock of the company, and with it his two notes above described, representing that the notes were secured by this mortgage, and that the notes so secured were assets of the company. Perry caused the mortgage to be recorded.

It does not appear that the Insurance Commissioners had made the criticisms which they were represented to have made and there is no finding and there was no evidence that the Insurance Commissioners ever saw, knew, or passed upon this so-called security.

The date of two of the notes was incorrectly described in the mortgage, but we do not tarry to consider the effect of such misdescription for the instrument was no deed. P. S. 2577.

A system of real estate conveyancing consisting in the signing and circulation of blank forms is not compatible with the law of this State.

It sufficiently appears that President Fletcher was acting as the agent of the company, and that the blank form was delivered to him as such; and the filling up of the blanks by his procurement so as to make a written instrument could have no effect without a redelivery. The orator's president could not make something out of nothing. *Town of Barnet* v. *Abbott*, 53 Vt. 120; *Williams* v. *Cutcher*, 35 Am. Dec. 422; *Burns* v. *Lynch*, 6 Allen, 306; *Ayres* v. *Homes*, 1 Ohio 368, 13 Am. Dec. 629; *Davenport* v. *Sleight*, 31 Am. Dec. 420; *United States* v. *Nelson*, 2 Brock. 64, Fed. Cas. No. 15, 862; 1 Shep. Touchstone, *54.

Although the notary's certificate of acknowledgement was false we do not discuss that matter for an unacknowledged deed may have force and effect as between the parties thereto. P. S. 2581; *Pierce* v. *Brown,* 24 Vt. 165; *Lemington* v. *Stevens,* 48 Vt. 38.

Nor do we discuss the lack of seals for an instrument to which the law requires what it calls a "seal" to be affixed, P. S. 21, may be treated in equity according to the intention of the parties. *Rutland* v. *Paige,* 24 Vt. 181.

Nor do we discuss the false attestation of at least one of the witnesses. For in equity in a proper case an unwitnessed deed may be treated as evidence of an agreement to execute a valid deed though it is not treated as conclusive evidence on that point. *Day* v. *Adams,* 42 Vt. 510; *Vermont etc. Co.* v. *Windham County Bank,* 44 Vt. 489; *Tillotson* v. *Prichard,* 60 Vt. 94, 107, 14 Atl. 302, 6 Am. St. Rep. 95; *Morrill* v. *Morrill,* 53 Vt. 74, 38 Am. Rep. 659.

Here there was no deed, void or voidable or imperfectly executed in its character, and the claim which the orator makes that the writing in question is to all intents and purposes a valid mortgage cannot be sustained.

But the orator urges that the defendants are estopped from denying the validity of the instrument on the ground that what was done was with their authority for the purpose of having a mortgage deed exhibited to the Insurance Commissioners. On no other ground could an estoppel be urged for the orator has not acted to his injury in ignorance of the truth in reliance upon what was done by the defendants. *Royce* v. *Carpenter,* 80 Vt. 37, 66 Atl. 888; *Pond* v. *Pond's Estate,* 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212.

But the doctrine of estoppel is an equitable one aimed at the prevention of fraud and no one can be heard to invoke it on any ground with respect to a transaction which he himself fraudulently contrived. 2 Pom. Eq. Juris., §813; *Porter* v. *Moore,* 1904, 2 Chan. 367; *George Whitechurch, Ltd.* v. *Cavanaugh,* 1902, App. Cas. 117, 145.

Here the orator cannot invoke the doctrine of estoppel. Having procured this simulated and sham mortgage, and its guilty intention having been equal to, if not greater than that of the defendants, it cannot assert for its own benefit an estoppel of the defendants to inform the court that the orator

itself was the originator and procurer of the contemplated fraud upon the Insurance Commissioners, an agency of the State, and to confess their part in the transaction. *Thorne* v. *Mosher,* 20 N. J. Eq. 257.

It appeared that the defendants filed a cross-bill alleging the existence of the claimed mortgage and the record thereof in the county clerk's office in Mt. Holly and praying for the removal of the cloud thereby created upon their title to the premises described in the alleged mortgage. The decree is silent as to the relief prayed for in the cross-bill, and the defendants claim that it should be granted. Both parties to a transaction may be in *delicto* and yet not in *pari delicto.* *Harrington* v. *Grant,* 54 Vt. 236; *Hinsdill* v. *White,* 34 Vt. 558; 2 Pom. Eq. Juris., §942.

But here the findings show no duress or undue influence or any other fact which entitled the defendants to be relieved from the results of their complicity in a contemplated fraud upon the Insurance Commissioners. So far as appears they willingly participated in putting upon their title the cloud which they ask the Court to remove. Therefore the court of chancery was right in this proceeding in leaving both parties where it found them. How much of a cloud or shadow rests on the defendants' title in view of the misdescription of the notes we do not undertake to determine.

The defendants took several exceptions to the master's report. Most of them relate to findings bearing upon questions ruled by us in the defendants' favor. Such of them as can be construed to affect the rights of the defendants under their cross-bill are immaterial. If the master had complied with them we should, nevertheless, be compelled to deny the defendants affirmative relief.

*Decree dismissing the bill with costs affirmed and cause remanded.*