### George W. Howard v. Elsie Marie Howard

[163 A.2d 861]

May Term, 1960

Present: Holden, Shangraw and Smith, JJ. and Morrison, Supr. J.

Opinion Filed September 6, 1960

28

*Howard W. Douglas* for the plaintiff.

*Edwin W. Lawrence* and *Donald M. French* for the defendant.

**Holden, J.** The object of this proceeding in equity is to obtain cancellation and rescission of an agreement in compromise and settlement of a bastardy action prosecuted by the defendant. The plaintiff is the husband of the defendant. The marriage of the parties on May 15, 1956 was a sequel to the events and circumstances which developed the present litigation. From a decree in favor of the plaintiff, declaring the compromise of no force and effect, the defendant appeals. The question presented is whether the decree is supported by the pleadings and the findings of fact.

The findings develop these facts. Prior to their marriage the plaintiff and defendant lived together in New York and Vermont as husband and wife from 1934 to May 7, 1956. In this relationship they became the parents of three children; the oldest born in 1938 and the youngest in 1943.

When the relationship between these parties began, the defendant was married to one Harold Schellenger. The findings state that the plaintiff had knowledge of the defendant's marital status as early as 1942. In 1944 the defendant's first marriage was terminated by a divorce obtained by Schellenger in the courts of New Hampshire.

On May 7, 1956, the defendant, through her attorney, J. Malcolm Williams, a member of the Vermont bar, brought complaints in bastardy proceedings against the plaintiff, predicated on the births of the younger children born in 1940 and 1943. Warrants issued on these complaints. The plaintiff was arrested and brought before the issuing magistrate at the office of the defendant's attorney. There the plaintiff was advised he could furnish bail in lieu of commitment to jail. Upon furnishing a surety in the amount of $1,000, the plaintiff was released from custody.

During the proceedings in Williams' law office, the plaintiff indicated he would like to discuss the matter with an attorney of his own selection and was advised by Williams that he was free to do so. Later the plaintiff changed his mind in this regard and stated to Williams he wanted to settle the matter. A heated and unsuccessful effort to reach a settlement with Williams followed. Later the defendant

arrived on the scene. What transpired in the conference between the plaintiff and the defendant does not appear, but the settlement that is attacked in this action was the product of this conference.

For some time prior to the commencement of the bastardy proceedings the parties had resided together on the Oscar Thomas farm in Tinmouth. They jointly operated the farm for the purpose of producing income.

As a result of the settlement effected in the office of the defendant's attorney the plaintiff's participation in the farming enterprise was terminated. The plaintiff transferred all his equity and interest in the farm livestock and machinery to the defendant, including twenty-four head of cattle, six horses, a New Holland baler, two tractors, tractor mower, a farm truck and all the farm tools. This property comprised all of the personalty owned by the plaintiff at that time except for a few personal effects.

In exchange for the transfer of property the defendant agreed to pay the plaintiff $750.00 and to assume and pay a mortgage indebtedness of $900.00 and a note on which there remained a balance of $137.00. At the same time, the defendant undertook to release the plaintiff "from any and all claims for assistance, support, legal costs and charges in connection with the two actions instituted against him by me on May 7, 1956. * * * As natural guardian unto Elaine, Alice and Naioma, my children, I further release and discharge George W. Howard from any claim for their support * * * ." A letter was then signed by the parties addressed to the defendant's attorney stating that the parties agreed to marry as soon as the laws of New York permitted. The letter directs the defendant's attorney to pay over $750 to the plaintiff upon his delivering a receipt and compliance with the agreement to compromise.

The parties were married eight days later. The agreement of sale and release were exchanged and the plaintiff received payment of $750.

This action was commenced July 5, 1956. The case was not heard until January 1959. At that time and before evidence was taken the plaintiff deposited $750 with the clerk of the court as a tender, preliminary to relief by way of rescission.

▪ The complaint seeks this remedy on allegations of fraud,

duress and undue influence. The chancellor concluded there was no evidence that the plaintiff was unable to exercise his free will and judgment in the period between May 7 and May 15, 1956 for reasons of fear or impelling pressure. Moreover, it was determined by pre-trial conference that the cause would be tried solely on the issue of fraud. This result restricted the subsequent course of the proceedings to that issue. See *In re Cartmell's Estate,* 120 Vt. 234, 238, 138 A.2d 592. And on this appeal we are confined to the question of whether the findings support the implication of fraud reached by the decree, in setting aside the agreement of settlement as of no force and effect.

The meretricious background of the relationship between these parties did not prevent the development of mutual obligations of trust and confidence. Their illicit alliance of more than twenty years was responsible for the procreation of a family. The disapprobation entertained by society in general toward such a coverture in no way detracts from the candor required of the parties in their dealings with each other. The strictness imposed on transactions of husband and wife has equal application to persons falsely pretending to the marital status. 2 Pomeroy, Equity Jurisprudence, 4th Ed. §963, p. 208; 3 Cooley Torts, 4th Ed. §373, p. 13. Indeed, the vulnerability of the parties and their children to public disdain aggravates the danger that might follow from a breach of good faith. When there is misrepresentation, concealment or artifice resulting in undue advantage to one participant over the other, equity will intervene to free the transaction from fraudulent overreaching. *Walker* v. *Walker,* 330 Mich. 332, 47 N.W.2d 633, 31 A.L.R.2d 1250, 1254.

Despite the longstanding family connection, the defendant resorted to the drastic remedy of complaint in bastardy to bring the plaintiff to task. In this she had no legal standing for the statutory proceeding is available only when "a single woman is delivered of a bastard child." 15 V.S.A. §331; *Gaffery* v. *Austin,* 8 Vt. 70, 72. The children who were the purported object of the defendant's prosecution were born while the defendant was a married woman.

The purpose of paternity proceedings under our statute is to secure the support and education of children born out of wedlock. To this end, a complaint in bastardy is the proper subject for com-

promise and settlement. *Beattie* v. *Traynor,* 114 Vt. 238, 240, 42 A.2d 435, 159 A.L.R. 1399.

The settlement of a doubtful claim is sufficient consideration for a promise to forbear legal action. It is of no consequence with which party the ultimate right resides. *Bellows* v. *Sowles,* 55 Vt. 391, 398; *Ballard* v. *Burton,* 64 Vt. 387, 391, 24 A. 769, 16 L.R.A. 664; *Beattie* v. *Traynor, supra,* at 241. But the doubtful right to be a good consideration for the settlement must be honestly entertained by the claimant. If the compromise has been achieved on a false and fraudulent claim, wholly without foundation, the contract may be avoided and the property transferred may be recovered. *Ormsbee* v. *Howe,* 54 Vt. 182, 186; *Bellows* v. *Sowles, supra,* at 399; *Sartwell* v. *Horton,* 28 Vt. 370, 373; 1 Williston, Contracts, Rev. Ed. 1936 §135, p. 478; 15 C.J.S. Compromise and Settlement, §33, p. 753; 11 Am. Jur. §31, p. 278.

The facts stated in the findings compose fraud within the concept of equity. Fraud in equity reaches an intentional act and concealment involving a breach of duty or confidence, by which undue or unconscientious advantage is obtained. *In re Campbell's Will,* 100 Vt. 395, 402, 138 A. 725, 54 A.L.R. 1369; *Pelton's Exr.* v. *Dumas,* 117 Vt. 13, 17, 84 A.2d 408; *Kendall's Admr.* v. *Roseberry,* 120 Vt. 498, 502, 144 A.2d 836; 2 Pomeroy's Equity Jurisprudence, 4th Ed. §873, p. 1804.

The defendant acted intentionally in proceeding against her partner and unlawful mate of more than twenty years. She had no lawful standing under the statute upon which she caused the plaintiff to be arrested. The charges were such that they would scandalize the family if brought to trial. By this course of conduct the defendant procured the plaintiff's ouster from the farm they operated together. These facts and attending circumstances are sufficient to develop and support the inference that the compromise was infected with fraud. The decree was to this effect. We will assume in support of the result reached by the chancellor's order that he concluded the transaction was fraudulent from the facts certified. *Scott* v. *Leonard,* 119 Vt. 86, 98, 119 A.2d 691; *Fair Haven* v. *Stanndard,* 111 Vt. 49, 53, 10 A.2d 214.

This construction of the findings deprives the defendant from successfully invoking the defense of estoppel. The doctrine is the creature of equity, aimed at the prevention of fraud. It is not available to protect the party who has contrived a fraudulent transaction. *Vermont Accident Insurance Co.* v. *Fletcher,* 87 Vt. 394, 397, 89 A. 480.

The question of whether the plaintiff has been guilty of laches to preclude relief invoked the lower court's discretion. Its decision in this regard will not be disturbed on appeal unless clearly shown to be in error. *Page* v. *Cave, Admr.* 94 Vt. 306, 310, 111 A. 398; *Philbrick* v. *Johnson,* 91 Vt. 270, 276, 100 A. 110. It appears the plaintiff acted with reasonable dispatch in bringing his action to rescind within two months after the settlement was reached and we find no reason to disturb the decree on this point.

The defendant attacks the decree on the inadequacy of the tender of restoration offered by the plaintiff. She complains that the plaintiff has the benefit of her agreement to support the children and to pay the farm indebtedness; that if he desires to rescind, he cannot retain the benefit that has accrued, citing *Caledonia Sand & Gravel Co.* v. *Bass Co.,* 121 Vt. 161, 151 A.2d 312. That this is the general rule is clearly stated in the opinion. But its author goes on to point out that the rule is not inflexible. The party seeking to disaffirm is required "to return the consideration received in so far as it lies within his power to do so." *Caledonia Sand & Gravel Co.* v. *Bass Co., supra,* 121 Vt. at 165, 151 A.2d 312.

In this instance the plaintiff has paid into court the money he has received in the transaction. The indebtedness assumed by the defendant, the support rendered to the children as well as the marital status of the parties are beyond the plaintiff's reach. A party seeking to rescind a contract on the ground of fraud who acts with reasonable dispatch and returns or offers to return what he has received in the transaction will not be deprived of a remedy by acts of the wrongdoer which make total restoration impossible. *Norton* v. *Gleason,* 61 Vt. 474, 480, 18 A. 45.

The defendant complains that the plaintiff continued to live with her after he learned of her existing marriage to Schellenger. The findings infer that the defendant successfully concealed her marital

status from the plaintiff until 1942. His continuing cohabitation with the defendant thereafter is not to be condoned. But by that time, two of the children had been born. The findings indicate that his wrongdoing was not of equal fault with that of the defendant and he should not be deprived of protection in equity for this reason alone. *Chaffee* v. *Rutland Railroad Co.,* 55 Vt. 110, 137; see also *Vermont Accident Insurance Co.* v. *Fletcher, supra,* 87 Vt. at 398, 89 A. 480.

There is a remaining finding, however, which obstructs the relief granted to the plaintiff and contradicts the result reached by the decree. Finding 23 states: "On May 15, 1956, eight days after the compromise settlement negotiations and the supporting payment were executed, plaintiff voluntarily ratified the same by consummating the transaction in accepting the $750.00 and the instrument of release (Pltf. Ex. 4) executed by Defendant."

Although the findings indicate a constructive fraud against the plaintiff, his right of action to set aside the transaction could be lost by subsequent confirmation and ratification. The defrauded party to a contract, by performing his part of the agreement, with full knowledge of the fraud, is deemed to have ratified the undertaking and his right to disaffirm will be lost. *Mallory* v. *Leach,* 35 Vt. 156, 172; *McLean* v. *Clapp,* 141 U.S. 429, 12 S. Ct. 29, 35 L. Ed. 804, 806; 2 Pomeroy, Equity Jurisprudence, 4th Ed. §964, p. 2090; 24 Am. Jur. Fraud and Deceit, §210, p. 36.

Finding 23 concludes that the plaintiff ratified the compromise. In this the finding is in derogation of the decree and is inconsistent with the result reached by the decretal order. A reversal is required since the finding and the decree cannot stand together. The relief afforded by the decree must conform to the pleadings and the proof as stated in the findings. *Vermont Motor Co., Inc.,* v. *Monk,* 116 Vt. 309, 311, 75 A.2d 671; *Hall* v. *Hodgdon,* 114 Vt. 63, 64, 39 A.2d 195; *Sanborn* v. *Kittredge & Morrill,* 20 Vt. 632, 636; *White* v. *Yaw and Gillet,* 7 Vt. 357, 362.

Although ratification would preclude relief for the original fraud, we will not order the bill dismissed. There is no subordinate or specific finding that the plaintiff had complete knowledge of all the facts when he accepted payment from defendant's counsel or that he acted

with deliberate intention of confirming the entire transaction. See *Dunn* v. *Dunn,* 42 N.J. Eq. 431, 7 A. 842, 847; *Hoag* v. *Hoag,* 210 Mass. 94, 96 N.E. 49, 50, 36 L.R.A., N.S. 329.

It appears from the findings that the day of ratification was the date the parties were married. The defendant admitted in her answer that the plaintiff married her in good faith and with good intent. The plaintiff, however, further alleged that the defendant has refused to permit him to enter upon the farm home and has prevented him from fulfilling his marital obligations. This allegation the defendant has denied, but the findings are silent on this aspect of the case, and the issue as joined by the pleadings is not resolved.

If, in truth, the plaintiff was induced to enter the compromise and settlement in the expectation that he would be restored to normal marital and paternal relationship in his family after the marriage ceremony, and the defendant forbade this result, there would not have been an effective affirmance or ratification by the prior exchange of releases and acceptance of payment. At that time the final disappointment referred to in the complaint had not been realized. No act of confirmation, however formal, will be effective against the injured party until the full extent of the deception is known. *Land Finance Co.* v. *Sherwin Electric Company,* 102 Vt. 73, 82, 146 A. 72, 75 A.L.R. 1025; 2 Pomeroy, Equity Jurisprudence, *supra,* at p. 209.

This shortage in the findings and the conflict between finding 23 and the decree require the remand of this cause in order that the question of confirmation and ratification of the fraud may be settled. That this Court has the discretionary power to restrict the reversal and remand on a limited issue is established in *Laferriere* v. *Saliba,* 119 Vt. 25, 34, 117 A.2d 380; *Mott* v. *Bourgeois,* 109 Vt. 514, 522, 1 A.2d 704; *Shea* v. *Pilette,* 108 Vt. 446, 457, 189 A. 154, 109 A.L.R. 933; *Johnson* v. *Hardware Mutual Casualty Co.,* 108 Vt. 269, 288, 187 A. 788.

*Judgment reversed and cause remanded for a new hearing and finding on the issue of confirmation and ratification of the compromise and settlement agreement on the part of the plaintiff.*