**Allan Trent Smith, Eric W. Smith and Peter C. Behn v. Alastair T. Munro, Peter S. Jennings and John Findlay, Inc. d/b/a Jennings Real Estate**

[365 A.2d 259]

No. 212-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed September 17, 1976

418

*Richard E. Davis Associates, Inc.*, Barre, for Plaintiffs.

*Robert W. Gagnon of McKee, Giuliani & Cleveland,* Montpelier, for Defendants.

Smith, J. Appellants are all real estate salesmen and brokers licensed in the State of Vermont. The appellees, Peter S. Jennings and Alastair T. Munro, are the major officers and stockholders of the appellee John Findlay, Inc., a Vermont corporation operating under the trade name "Jennings Real Estate".

At various times beginning in 1967 and extending into 1970 the appellants entered into written employment contracts with Peter Jennings and Jennings Real Estate. Until July of 1968, Jennings Real Estate functioned as a partnership. At that time Jennings organized John Findlay, Inc., which assumed the Jennings Real Estate operations and registered to do business under that trade name. Appellee Munro acquired his interest in the corporation in July of 1970. All the contracts involved here included provisions concerning the fixing and payment of commission rates. In addition, all contained

identical "non-competition" clauses. Appellants allege that the contractual provisions regarding commissions were never observed by appellees. Accordingly, in the spring of 1973, appellants decided to terminate their relationship with appellees and establish their own real estate agency. In order to avoid the non-competition clauses of their contracts, appellants executed with appellees a Memorandum of Agreement in which appellees agreed to release appellants from their contracts and provide them with customer lists and open listings. In return, appellants were to pay appellees $20,000.00 out of their gross commissions. This document also made provision for payment to appellants of commissions on sales initiated by them prior to the agreement and closed by appellees at a later date. The trial court found several defaults by appellees as to these payments, and resultant sums owed to the individual appellants. These commissions remained unpaid despite notice timely given. Appellants' action for declaratory judgment resulted in findings of fact and conclusions of law upholding the validity of the original employment contracts and the Memorandum of Agreement, releasing the appellants from any restrictions on competition, holding appellees liable for the unpaid commissions and appellants liable, in turn, for the $20,000.00 payment.

The question posed for our resolution is whether the lower court erred by finding the Memorandum of Agreement to be a valid agreement requiring appellants to pay appellees $20,000.00.

Clearly, it seems to us that the facts underlying the execution of the Memorandum of Agreement support the court's finding that it was a valid enforceable agreement. The employment contracts superseded by the agreement were all binding instruments. Any alleged breaches on behalf of appellees were undoubtedly waived by the subsequent conduct of appellants. See *Lowell* v. *Wheeler's Estate*, 95 Vt. 113, 112 A. 361 (1921). Appellants assert that these contracts were not valid and binding since they had never been assigned with their consent to John Findlay, Inc. The record reveals, however, that the contracts of two of the appellants, the Smiths, were signed after the date of the corporation's creation. Furthermore, testimony of appellant Behn reveals that he was

fully aware of the corporation's existence and considered himself an employee thereof. The conduct of all three appellants, subsequent to the formation of the corporation, reveals that appellants intended to continue their employment under the contractual relationship and be bound by the terms thereof. In addition, the evidence demonstrates that the Memorandum of Agreement was supported by valuable consideration in the form of customer lists, open listings, and, most importantly, release of appellants from the non-competition aspects of their employment contracts. Viewed from this perspective furnished by the record, the court's determination that the Memorandum of Agreement was valid and enforceable was proper and correct. Compromises of disputed liability by parties cognizant of the facts are not only valid, but are favored as a matter of public policy.

Appellants contend that even though the agreement may have been valid when entered into, subsequent defaults by appellees gave appellants the right to rescind the contract and regard it as a nullity. Since this action was brought pursuant to 12 V.S.A. § 4712 seeking a declaratory judgment, it was appropriate for the trial court to construe the agreement for the purpose of determining its effect, result, validity, and the respective rights, duties, and liabilities of the parties thereunder. The court's action in this regard was especially proper in this case given the rule of law that in order to rescind a contract, the party seeking rescission must act affirmatively to restore both parties to their condition before the contract. *Hammond* v. *Buckmaster*, 22 Vt. 375, 380 (1850); *Howard* v. *Howard*, 122 Vt. 27, 33, 163 A.2d 861 (1960). In the present case, appellants made no effort whatsoever to bring about any sort of restoration of the parties. Where the parties cannot be placed in status quo, cancellation or rescission is never directed unless demanded by the clearest and strongest equity. *Lariviere* v. *Larocque*, 105 Vt. 460, 469, 168 A. 559 (1933). Such equities do not appear here, since what the appellants seek is cancellation of a $20,000.00 indebtedness because they have not been paid sums amounting to a fraction of that figure, plus retention of customer lists and their freedom to compete.

Examination of the record reveals no basis for upsetting the facts found by the trial court. The findings are clearly supported by the evidence and provide ample support for the conclusions reached.

*The judgment of the Washington Superior Court is affirmed.*