E. E. NAUGLE *et al.*

*v.*

CHARLES T. YERKES.

*Opinion filed October 19, 1900.*

1. CONTRACTS—*one rescinding contract for fraud should place other party in statu quo.* One who desires to rescind a contract for fraud must act promptly and at once tender back what he has received under the contract, and if he remains silent or in any way recognizes the validity of the contract after discovering the alleged fraud he is bound thereby.

2. SAME—*when party cannot rescind contract by bill in chancery.* If parties to a construction contract agree that the value of "special work" shall be fixed by a third party in case of dispute, the fact that such third party is alleged to be in the employ of one party under a fraudulent agreement to undervalue the work does not give the other party the right to rescind the contract by bill in chancery, if all parts of the contract except the making of the award have been performed, as he has an adequate remedy at law.

*Naugle* v. *Yerkes*, 83 Ill. App. 310, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill in equity filed by the appellants on the 11th day of April, 1898, in the circuit court of Cook county, against the appellee, praying that an agreement between the appellants and appellee, bearing date July 26, 1897, be rescinded and canceled, and that appellee be decreed to account to appellants for all of the stocks and bonds of the Suburban Railroad Company received by him under and in pursuance of said agreement, together with the possession of said railroad and the income derived therefrom since July 26, 1897. The bill having been amended, appellee filed a general and special demurrer thereto, which was sustained, and the appellants having elected to stand by their bill, a decree was entered dismissing the bill and for costs. The Branch Appellate Court for the First District having affirmed such decree, an appeal has been prosecuted to this court from such decree of affirmance.

On the 23d day of May, 1895, the Suburban Electric Railroad Company was organized under the laws of the State of Illinois, with power to construct and operate a railroad from the city of Chicago to cities, towns and villages in Cook, Lake, DuPage and Kane counties. The name thereof was subsequently changed to the Suburban Railroad Company. Said corporation, after its organization, obtained from said cities, towns and villages the right to construct its railroad through such territory, and on or about the 20th day of July, 1895, it entered into a contract with one Charles S. Leeds for the construction and equipment of its railroad and appurtenances. Said Leeds having failed to construct and equip said railroad, he was succeeded by the Suburban Construction Company, a corporation organized to construct and equip

said road, and said construction company having failed
to construct and equip the said railroad, it, in turn, was
succeeded by appellants. The appellants, by reason of
financial embarrassment, brought about, as alleged in
their bill, by the wrongful acts of appellee, being unable
to complete the construction and equipment of said rail-
road, on the 26th day of July, 1897, made the contract
with appellee sought by this bill to be canceled and an-
nulled, in lieu of which, by reason of its length, we insert
a synopsis thereof prepared by the chancellor who tried
the case below, which is as follows:

"The agreement provides for the assignment to Yerkes
of the construction contract under which the complain-
ants were building the railroad, Yerkes agreeing to as-
sume and protect complainants from certain indebtedness
and claims against complainants, incurred in connection
with carrying out the contract for the building of the
road, and also against other claims which had been as-
sumed by the complainants when they obtained their
construction contract, amounting to many thousand dol-
lars. Yerkes also was to refund certain specified items
of over $35,000, and refund certain items of payments
made by the complainants in connection with the Leeds
contract, amounting to over $42,000, and to protect the
complainants against liability upon bonds given various
municipalities and other bonds of the railroad and of the
Suburban Construction Company; also to protect the
complainants in their contract with the Suburban Con-
struction Company as to the payment of certain interest
and as to certain assumptions of debts and contracts of
said construction company and of said Leeds; also to
protect complainants against suits for personal injuries
arising out of the performance of their construction con-
tract, or the operation of the roads or the operation of
leased lines by the complainants. Upon delivery of the
agreement of July 26, 1897, it was provided that certain
shares of stock of the railroad company were to be de-

livered by the complainants to Yerkes upon the payment of $125,000; that Yerkes was to pay $50,000 in August and in September following. The complainants were to finish building the railroad in accordance with the provisions of their said contract with the construction company, which was assigned to Yerkes, except as modified by the agreement with Yerkes, and to receive the certificates of the engineer of the railroad therefor as the work progressed, which certificates were to be paid by Yerkes on presentation. In the contract with Yerkes the complainants agreed to build a certain power house and to do certain 'special work' in connection with the building of the railroad, all of which was to be paid for 'at cost,' to be determined by M. K. Bowen. Some of the special work was done and ready to be put in place at the date of the contract with Yerkes, and other portions of said work were thereafter to be done by complainants and to be paid for upon the presentation of bills therefor, and in case Yerkes did not approve the bills as being the fair cost therefor, the 'same shall likewise be estimated by said M. K. Bowen.'"

The control of the railroad was surrendered to the appellee, as provided in the agreement, and a board of directors elected satisfactory to appellee. Appellants have finished the construction of the railroad as they agreed, and the appellee has paid to them, and on their account, a large sum of money, not less than $400,000.

The bill of complaint of appellants, after setting out a full history of the organization and the efforts made to construct and equip said railroad, down to and including the making of the contract of July 26, 1897, between appellants and appellee, the substance of which has above been stated, concluded as follows:

"Your orators further show, that immediately upon the execution of said contract your orators turned over to said Yerkes and his agents the stocks and bonds in their possession, in accordance with the terms thereof,

and the possession of said railroad, although they continued to operate the same for a period, as provided in said contract. Various sums of money were paid to your orators, and your orators were expecting to go on with the provisions of said contract when they learned that M. K. Bowen, to whom there was assigned, under and by the terms of the said proposition and contract, the duty of ascertaining the cost of certain special work and the power house, no part of the cost of either said special work or said power house having yet been paid to your orators, had been employed by said Charles T. Yerkes as his agent and representative in the matter of estimating and reporting the cost and price to be paid for the special work and the power house under the terms of said contract, and instead of impartially and justly investigating the actual cost to your orators and their predecessors in interest of the matters and things so to be investigated and ascertained by him, he regarded himself, by virtue of such employment, as the agent and representative of said Charles T. Yerkes and bound to obey the instructions of the said Charles T. Yerkes therein, and openly confessed to your orators that he would return the cost at one-half or one-third the actual cost, if he was so instructed by said Charles T. Yerkes.

"Your orators further aver that they have not received or accepted anything on account of said contract since they became aware of the employment of said Bowen by said Yerkes, but straightway caused a notice to be given to said Bowen, and arranged, by stipulation with the attorney of said Charles T. Yerkes, that the said Bowen should take no action in the premises until further notice from the parties, which was done with the intention of investigating the rights of your orators in view of this extraordinary state of affairs, and seeing whether or not the matters in dispute could not be adjusted without the necessity of reference to said M. K. Bowen, and with the intention of preserving matters *in statu quo* until such

rights could be investigated and arrangements made, if possible, to protect the rights of your orators through other means, it being manifestly unjust and inequitable, as your orators are advised and believe, that they should be compelled to submit any matter to a person who has thus been employed by the said Charles T. Yerkes; that, notwithstanding the said stipulation and notice, the said Bowen, acting, as your orators believe, under the directions of the said Charles T. Yerkes, and as a means to induce your orators to submit to further exactions and injustice, disregarding the said stipulation, made a pretended report, without any examination of the vouchers of your orators or any attempt to investigate the cost of the matters so referred to him, said report fixing the sums, in many instances, at less than half what was actually due to your orators, under the terms of said agreement, had the said Bowen impartially discharged his duty and made any attempt to inform himself as to the actual cost of the matters so referred to him; that immediately upon the receipt of said report from said Bowen the attorney representing the said Yerkes notified the attorney of your orators that the mailing of said report was a mistake, that it should be re-called, and asked that the same be returned, which the complainants have done; that afterwards, in the negotiations looking to a settlement of the matter independently of the said Bowen, the defendants relied upon the valuations put upon the said items by the said Bowen, who has been, as your orators aver, and was soon after the execution of said contract, employed by said Charles T. Yerkes, and who has avowed himself the agent and representative of said Yerkes in procuring a settlement under the contract and proposition of July 26, 1897.

"Your orators further aver that in and by the terms of said contract payments were to be made on certain dates, and, among other things, payments were to be made to the Pullman Palace Car Company,—all of which

the said Yerkes has neglected and refused to do. And your orators further aver that they have demanded of said Yerkes the return to them of all the stocks and bonds by them delivered under and in pursuance of the said contract of July 26, 1897, together with the possession of the railroad, and have offered to re-pay to said Yerkes all sums received by them or paid by him for their account under and in pursuance of said contract; and your orators hereby and herein offer to pay to the said Charles T. Yerkes all sums that have been paid to them or for their account under and in pursuance of said contract of July 26, 1897."

CHARLES H. ALDRICH, for appellants.

KNIGHT & BROWN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The only matter left uncertain by the contract of July 26, 1897, is the amount to be paid appellants for the "power house" and the "special work," which, by the terms of the contract, was to be determined by M. K. Bowen.

The ground for equitable relief relied upon in the bill is the alleged interference with the impartiality of Bowen by appellee. The bill cannot be maintained, in our opinion, on that ground, for two reasons:

*First*—The appellants have not placed the appellee *in statu quo.* The rule is well settled that when a party desires to rescind a contract upon the ground of fraud, it is his duty to act promptly and at once tender back what he has received under the contract. If he remain silent and proceed to complete the contract or in any way recognize the validity thereof after he has notice of the fraud, he will be held to have waived the objection and be conclusively bound by the contract. *Day* v. *Fort Scott Investment Co.* 153 Ill. 293; *Rigdon* v. *Walcott,* 141 id. 649; *Doane* v. *Lockwood,* 115 id. 490; *Buchenau* v. *Horney,* 12 id.

336; *Greenwood* v. *Fenn*, 136 id. 146; *Grymes* v. *Sanders*, 93 U. S. 55.

It is said in *Day* v. *Fort Scott Investment Co. supra*, (p. 304): "It is a familiar rule, and one well settled by the authorities, that where a party discovers that fraud has been practiced upon him in the making of a contract, it is his duty at once to repudiate the contract and tender back what he has received under the contract, so that the other party may be placed as nearly as possible in the same position he occupied before the contract was made."

In *Rigdon* v. *Walcott, supra*, we say (p. 660): "A contract into which a party has been induced to enter by the fraud of the other party is not void, but is only voidable at the election of the defrauded party. Until he has elected to rescind, and has performed such acts on his part as are necessary to work a rescission, the contract remains in full force, and he is entitled to no remedy which is not based upon the theory of its continued validity. It is a general rule, to which there are but few exceptions, that the restoration of the party against whom the relief is sought, or the offer to restore him, to the position which he occupied before the transaction complained of took place, is a condition precedent to the right to rescind. The right can be exercised only upon the terms of returning the consideration received, or, perhaps, under certain circumstances, of returning its value."

In *Doane* v. *Lockwood, supra*, it was said (p. 496): "Undoubtedly the law is, where a party has received any valuable consideration upon the sale of property he can not rescind the contract for fraud without first returning to or offering to return to the purchaser the consideration received, whatever it may be. The title of the fraudulent purchaser is subject to be divested, at the election of the seller, within any reasonable time after the fraud is discovered. When a sale is thus rescinded for fraud it is as though no sale of the property had been made."

In *Buchenau* v. *Horney, supra,* we said (p. 338): "A party cannot rescind a contract of sale and at the same time retain the consideration he has received. He cannot affirm the contract as to part and avoid the residue, but must rescind it *in toto.* He must put the other party in as good a condition as he was before the sale, by a return of the property purchased."

In *Greenwood* v. *Fenn, supra,* which was a bill to set aside a contract for the sale of land on the ground of fraudulent representations as to the quality of the land, we said (p. 158): "The rule on this subject is well stated in *Grymes* v. *Sanders,* 93 U. S. 55, as follows: 'Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent and continue to treat the property as his own he will be held to have waived the objection, and will be conclusively bound by the contract as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted.'"

At the time the contract was made between appellants and appellee the railroad was but partially completed. Large sums of money have since been expended by appellee in the completion thereof and in the payment of obligations assumed by him, and all the provisions of the contract have substantially been complied with by both parties, with the exception of those relating to the "power house" and "special work." We are of the opinion the appellants cannot rescind said contract, as, from the nature of the transaction and the necessary inferences which follow from the facts alleged in the bill, it appears they have heretofore failed, and it is impossible now for them to place the appellee in the position he occupied prior to and at the time of the making of the contract of July 26, 1897. Especially is this true as the railroad is owned by the Suburban Railroad Company,

a corporation, and not by appellee, and it is not a party to this bill.

The bill does not state when knowledge of the alleged fraudulent arrangement between appellee and Bowen came to appellants. All intendments being against the pleader, for aught that appears in this bill appellants may have known of such fraudulent arrangement before any part of said contract was executed. It is said in 2 Pomeroy's Eq. Jur. sec. 897: "All these considerations as to the nature of misrepresentations require great punctuality and promptness of action by the deceived party upon his discovery of the fraud. The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction, and give the other party an opportunity of rescinding it and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations."

*Secondly*—The appellants have a plain, speedy and adequate remedy at law, and if anything is due appellants upon the "power house" or for "special work" the law will afford them complete redress, notwithstanding the alleged misconduct of Bowen. The law is too well settled to require the citation of authorities, that if the appellants have an adequate remedy at law, a bill in chancery will not lie to rescind said contract. We are of the opinion the appellants have an adequate remedy at law, notwithstanding the alleged fraudulent and corrupt agreement between appellee and Bowen.

Where the parties to a contract for labor in cutting stone make an architect umpire to settle all disputes,

and agree that his decisions will be final, and agree for the payment of extra work provided the architect shall certify to the amount due, they will be bound by the agreement, and unless the architect act in bad faith, refuse to act, or is prevented by some unforeseen and uncontrollable cause, no action can be maintained for extra work without his certificate, but if he acts in bad faith, refuses to act, or is prevented by some unforeseen or uncontrollable cause, suit may be brought. (*Fowler* v. *Deakman*, 84 Ill. 130.) Upon the sale of personal property, the price to be fixed by arbitrators, if the performance of the condition for a valuation be rendered impossible by the act of the vendee, the price of the thing sold must be fixed by the jury on a *quantum valebat*. (*Humaston* v. *American Telegraph Co.* 20 Wall. 20.) If the performance of the condition for a valuation be rendered impossible by the act of the vendee, the price of the thing sold must be fixed by the jury on a *quantum valebat*. (Benjamin on Sales, p. 430.)

*Hood* v. *Hartshorn*, 100 Mass. 117, was a suit upon a covenant in a lease, by which it was agreed that at the expiration of the term the buildings erected by the lessee on the demised premises should be appraised by three disinterested men, to be chosen, one by the lessor, one by the lessee and the third by the two thus appointed, and that the lessor should purchase the buildings at the price fixed by such appraisers. Certain persons were appointed appraisers, who refused or neglected to act, and the lessor refused to join in the selection of others to act in their stead. It was held that the obligation of the lessor to pay for the building was not entirely dependent upon the making of an appraisal, but that the appraisal was to be regarded as a mere method of ascertaining the price to be paid for them; that while the lessor was bound to do all that was reasonably in his power to procure the stipulated appraisal, yet if he had

done so and failed, he was entitled to recover the value of the buildings to be assessed by a jury.

*Phippen* v. *Stickney,* 3 Metc. 384, was a suit upon an agreement under seal, by which the defendant covenanted to sell and convey to the plaintiff certain lands which he was about to purchase at auction, on such terms as three persons, specifically designated, should decide to be just and reasonable. But two of the arbitrators named agreed to an award, the third dissenting and refusing to sign it. The defendant having refused for that reason to perform the award, suit was brought to recover a penalty for default, fixed by the agreement, and the court, in sustaining the plaintiff's right to recover, say (p. 389): "In a case like the present, if it appears that the plaintiff has done all in his power to procure an award, fixing the amount to be paid by him in pursuance of the terms of the contract, we do not think that the act of any one of the persons thus selected as arbitrators, in refusing to concur with his associates in fixing the sum to be paid, should operate to divest the rights of the plaintiff arising under the contract."

Furthermore, this is not a case for rescission. The valuation of the "power house" and "special work" by Bowen is a small matter when compared with the entire subject matter covered by the contract of July 26, 1897. Appellee cannot be placed *in statu quo,* and the rights of appellants, if their contention is correct as to the facts, can readily be settled in a court of law and satisfied by a money judgment.

We are of the opinion, therefore, that the judgment of the Branch Appellate Court should be affirmed.

*Judgment affirmed.*