# JOHN V. L. FINDLAY *vs.* THE BALTIMORE TRUST AND GUARANTEE CO.

*Bill to Rescind Executed Contract for Fraud—When Plaintiff's Inability to Restore the Thing Purchased not a Bar to Decree for Rescission—False Statements in Prospectus as to Value of Railway Bonds—Liability of Promoters.*

A bill for the rescission of an executed contract for the purchase of railway bonds, on the ground of false and fraudulent misrepresentations by the seller, alleged that the defendant company issued and sent to the plaintiff a prospectus offering for sale the first mortgage bonds of the Nashville R. Co., described as owning certain designated properties, and stating that "after careful investigation of the above property and after the most conservative estimates of its earning capacity" the defendant company "unhesitatingly recommends these bonds to investors as a safe security;" that relying upon the representations in the prospectus and oral recommendations from officers of the defendant, the plaintiff purchased some of the bonds, and after the payment of one installment of interest thereon the railway company was put in the hands of receivers upon a bill to foreclose the mortgage to secure the bonds, in which mortgage the defendant company was the trustee; that a syndicate of which defendant company was a member had purchased certain railway properties and sold them to the Nashville R. Co., which was controlled by the same syndicate; that after the default in the payment of interest the plaintiff acting on the advice of the defendant surrendered his bonds to the defendant as depository for a committee representing the bondholders, and took therefor negotiable receipts of the defendant, and also sold to the defendant coupons for a subsequent instalment of interest. The bill charged that the representations made in the prospectus that the defendant had made a careful examination of the property of the railway company and a conservative estimate of its earning capacity were not and could not have been true and made in good faith, but the same were made falsely and with fraudulent intent; also that the defendant withheld and suppressed facts as to the value of the bonds as an investment and that these, with other misrepresentations and concealments, were made for the purpose of deceiving and did deceive the plaintiff and induce him to buy the bonds. Plaintiff offered to surrender the negotiable certificates issued for the bonds deposited with defendant and prayed for a decree requiring the defendant to restore to plaintiff the amount paid by him for the bonds less the amount of coupons purchased. Upon demurrer to the bill, *held*, that although the plaintiff is unable to return to the defendant the bonds bought, but only the receipts therefor, yet, since this

change in the situation was brought about by the advice of the defendant, plaintiff is not, for that reason, prevented from obtaining a rescission of the contract.

*Held*, further, that the alleged fraudulent representations by the defendant are set forth in the bill with reasonable accuracy and sufficient certainty, and are such that, if proved to be true, entitle the plaintiff to the relief asked for, and that consequently the demurrer to the bill should be overruled and the defendant required to answer.

Appeal from Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued at the January Term and was re-argued at the April Term, 1903, before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John V. L. Findlay* and *Thomas Mackenzie*, for the appellant.

*John N. Steele* and *Edgar H. Gans*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity filed by the appellant against the appellee, the Baltimore Trust and Guarantee Company, to rescind a contract of purchase of certain bonds of the Nashville Railway Company sold by the latter to the former on the ground of alleged fraud, false representation and concealment.

The case was heard on bill, exhibits and demurrers and from an order of the Circuit Court of Baltimore City passed on the 24th of December, 1902, sustaining the demurrers and dismissing the bill, this appeal has been taken.

The real question in the case and the one presented on the record by the demurrers is whether the appellant has stated such a case as entitles him to equitable relief and which requires an answer.

As the demurrers admit the truth of the allegations of fact contained in the bill in so far as they are relevant and well pleaded, it will be necessary to state them here somewhat in detail for a proper understanding of the case as presented on the appeal.

The bill alleges that the appellee is a Maryland corporation and has its place of business in the city of Baltimore; that sometime in February, 1900, it issued and sent the appellant an advance circular or prospectus wherein it stated that it was the owner of part of an issue of the first consolidated mortgage 50-year 5 per cent gold bonds of the Nashville Railway of Nashville, Tennessee; that the bonds were not redeemable before maturity but might be purchased for the sinking fund at not over 110 and interest and the interest was payable on the 1st of February and August in each year; that the prospectus issued by the company stated the different properties owned by the Railway Company, their earning capacity, accompanied by an engineer's estimate and recommended the purchase of the bonds as follows: "The Baltimore Trust and Guarantee Company has never yet given its unqualified recommendation to any security that has not invariably paid both interest and principal with exact and unfailing promptness, and after careful investigation of the above property, and after the most conservative estimates of its earning capacity, the Baltimore Trust and Guarantee Company unhesitatingly recommends these bonds to investors as a safe security." And that in addition to this circular other representations of a public character as to the safety and value of these securities were made by the company, and that Mr. Robt. C. Davidson, its president, recommended them orally to the appellant and advised him to become a subscriber for them; that relying upon these representations he purchased three of the bonds at the sum of $3,003.34.

The bill further avers that the Nashville Railway was formed by a syndicate of which the appellee was a member and that the purpose of its organization was to purchase all of the then existing street railway companies in the city of Nashville and to consolidate them under one management, and the consolidated company as made up was controlled and governed by the appellee and others.

The bill further alleges that the Nashville Railway only paid one installment of interest on its bonds, and is now in the

hands of receivers during the pendency of proceedings instituted at the instance of the appellee for foreclosure under a mortgage given to secure the bonds and in which mortgage the appellee is appointed trustee for the purposes therein named. .

The bill also alleges that after the default in the payment of interest a committee representing the bondholders of the railway was constituted and the appellant in entire ignorance of the fact and without any cause to suspect the good faith of the appellee, and without knowledge of the fact, subsequently acquired, and acting on the advice and recommendation of the appellee company its officers and agents surrendered the bonds which he had paid for to the appellee company, acting as a depository of bonds for the committee and took therefor the negotiable receipts and certificates of the company which he holds, and also sold to it the coupon for the six months interest falling due on the first of February, 1901.

The bill then charges, first, that the representations made in the advance circular or prospectus that the appellee company had made a careful investigation of the property of the Railway Company and a conservative estimate of its earning capacity *were not* and could not have been true and made in good faith in view of the immediate default of the company to meet and pay the interest on its obligations and that *in fact* it offered for sale and sold the bonds by means of false representations made in the circular and with the fraudulent intent and purpose of appropriating the money of the appellant and others to its own use and benefit and in disregard of the rights of the bondholders. And that it was upon the faith of the statements and representations so made by the appellee, as trustee under the mortgage, that the bonds were purchased by him. Second, that the appellee withheld and suppressed facts as to the value and safety of the bonds as an investment ; that the representations as to the earning capacity of the railway were false in fact, and that these with other alleged misrepresentations and concealments on the part of the appellee company charged in the bill were made with a fraudulent in-

tent to deceive and were made for the purpose of inducing, and did deceive and did induce, the appellee to purchase the bonds to his great injury and damage.

The prayer of the bill is for a discovery and for a decree requiring the appellee to restore the amount of money paid by him for the bonds, less the amount of coupons purchased, the appellant tendering a surrender of the negotiable certificates issued at the time of the deposit of the bonds with the company.

The appellee demurred to the bill, stating several grounds for demurrer which may be considered under two heads, namely:

(1) That the plaintiff upon the face of the bill discloses the fact that he is not in a position to ask for a rescission of the contract between him and the defendant, as he is not able upon such rescission to restore to the defendant the bonds bought by him.

(2) That the plaintiff has not stated in his bill such a case as entitles him to any relief in equity against this defendant.

The case then before us is a suit in equity to rescind a contract for alleged fraud and misrepresentation and for equitable relief.

The general rule is well settled that Courts will not rescind executed contracts, except in a clear case. The rule is thus stated by the Supreme Court of the United States in the case of *Atlantic Delaine Co.* v. *James*, 94 U. S. 207, that " The cancelling an executed contract is an exertion of the most extraordinary power of a Court of equity. The power ought not to be exercised except in a clear case and never for an alleged fraud unless the fraud be made clearly to appear; never for alleged false representations unless their falsity is certainly proved and unless the complainant has been deceived and injured thereby." And in *Grymes* v. *Saunders et al.*, 93 U. S. 62, it is said that a Court of equity is always reluctant to rescind, unless the parties can be put back in *status quo.* If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it.

Now we think it is clear that the bill demurred to, states such a case as the defendant should be required to answer.

The principal ground relied upon by the appellee to defeat the relief sought is that the plaintiff is not entitled to rescind the contract of purchase because having disposed of the bonds, he cannot restore what he purchased, and restore the precise *status quo.* It is quite apparent however that this case does not fall within the application of the principle here relied upon, because the cause of the change of the situation of the parties as to the bonds, is alleged by the 13th paragraph of the bill to have been brought about by the advice and recommendation of the defendant company. It is true as stated by CHIEF JUSTICE MARSHALL in *Pratt* v. *Carroll*, 8 Cranch, 475, "that equity will not relieve where it is impossible to place the parties in the same situation and when the real fault is imputable to the person praying the aid of the Court." But it is also well settled, that when the situation of the parties is altered and changed by the fraud of the vendor, the defrauded party will be granted relief in a Court of equity.

In the case of *Erlanger* v. *Sombrero Phosphate Company*, 3 Appeal cases, 1278, LORD BLACKBURN, in speaking of the rescission of contracts in equity, says: "The practice has always been for a Court of equity to give this relief whenever by the exercise of its powers it can do what is practically just, though it cannot restore the parties precisely to the state they were in before the contract. Two circumstances always important in such cases are the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy." "I have looked in vain for any authority which gives a more distinct and definite rule than this; and I think, from the nature of the inquiry, it must always be a question of more or less, depending on the degree of diligence which might reasonably be required, and the degree of change which has occurred, whether the balance of justice or injustice is in favor of granting the remedy or withholding it."

And in *Savery* v. *King, et al.*, 5 House of Lords, 667, it is said: "That it is impossible, therefore, as to that policy to restore Mr. Savery exactly to the position in which he stood before 1835; but he cannot be heard to complain of this, for by the arrangements which he had made or concurred in, he had led Richard to suppose that all the policies had become his own, and that he might deal with them as he thought fit; indeed he himself suggested a sale of one or more of the policies as a step which it might be advisable for Richard to take. All therefore which can be done as to the policy which was sold, is to charge Richard in account with Mr. Savery with the sum which it produced, together with interest from the time when it was sold." And we may add, that this is the well established law in this country. *Grymes* v. *Saunders*, 93 U. S.; *Pratt* v. *Carroll*, 8 Cranch; *Tayman* v. *Mitchell*, 1 Md. Ch. 496; *Refining Company* v. *Campbell & Zell Co.*, 83 Md. 55.

We come then to the second objection raised by the demurrer, and that relates to the sufficiency of the averments of the bill. We think it is clear that this bill states the facts relied upon with reasonable accuracy and with sufficient certainty as required by the rules of equity pleading. The object of pleading is to give the parties notice of the ground of claim and defense and when this is done the object of the rule is attained. *Grain v. Barnes*, 1 Md. Ch. 156; *Ridgely* v. *Bond*, 18 Md. 450.

The bill alleges in the 4th paragraph that the representations made in the circular or prospectus that the company had made a careful investigation of the property, &c., and a conservative estimate of its earning capacity were not and could not have been true and made in good faith; that in fact it offered for sale and sold the bonds by means of false representations made in the circular with the fraudulent intent and purpose of appropriating the money to its own use and benefit without giving an equivalent therefor. Furthermore, it is stated that the appellee withheld and suppressed material information as to the value and safety of the bonds as an investment, and that it was upon the faith of the representations

contained in the prospectus that he purchased the bonds, and further charges that the representations so made were false in fact and made with a fraudulent intent to deceive. And these averments of the bill are admitted by the demurrer to be true.

It seems to us then that the averments just referred to are sufficient in themselves, without stopping to consider the other paragraphs of the bill, to require an answer from the defendant company in this case. In *Savage* v. *Bartlett*, 78 Md. 565, this Court adopted with approval the rule laid down by the English cases, where it is stated: "Those who issue a prospectus holding out to the public the great advantages which will accrue to persons who will take shares in a proposed undertaking, and inviting them to take shares on the faith of the representations therein contained, are bound to state everything with strict and scrupulous accuracy, and not only to abstain from stating as a fact that which is not so, but to omit no one fact within their knowledge, the existence of which might in any degree affect the nature, or extent, or quality of the privileges and advantages which the prospectus holds out as inducements to take shares."

In the case at bar, the appellee company not only stood in the relation of promoter and trustee under the mortgage, but it is stated by the bill it was a stockholder of the company to the extent of one-third interest therein.

In the recent case of *Tompkins* v. *Sperry, Jones & Co.*, 96 Md. 560, this Court emphatically declared that promoters of corporations are bound to practice no concealment toward persons whom they invite to become interested in the enterprise and are required to give them all desired information as to their own relations to the company. And in *Wenstrom Con. Co.* v. *Purnell*, 75 Md. 120, in a case where a bill was filed to rescind a contract for alleged false representations JUDGE ALVEY thus states the law. "It is now settled that where a subscriber to stock has been deceived and induced to enter into a contract of subscription by misrepresentation and fraud of an agent acting for the corporation, such contract, while not absolutely void, is voidable at the election of the party de-

ceived; and he will be entitled to have the contract of sub-scription rescinded and declared void, and to have restitution made of all money paid thereon, provided he elects to repu-diate the contract at once upon the discovery of the fraud, and he is guilty of no unnecessary delay in coming to a Court of equity for relief. This relief will be afforded even after the complete execution of the contract, if the rights of creditors, or of innocent third parties, do not intervene and give rise to equities superior to those of the stockholder alleging himself to have been defrauded. But in all such cases the rule is uniformly declared and applied, that the particulars of the misrepresentations and fraud must be distinctly alleged, and fully and clearly proved to entitle the party to relief; and that relief will only be granted in those cases where it plainly ap-pears that the misrepresentation or undue suppression of ma-terial facts actually occasioned and brought into existence the contract. *Hallows* v. *Fernie*, 3 Chy. App., 467; *New Bruns-wick & Canada Railway Co.* v. *Conybeare*, 9 Ho. L. Cas. 711; *Houldsworth* v. *City of Glasgow Bank*, 5 App. Cas. 317; 1 *Moraw Corp.*, secs. 100, 101 and 102, and cases there cited."

We think then, without prolonging this opinion, that this case comes within the reasoning of the authorities here cited and that the Court below committed an error in sustaining the demurrers and dismissing the plaintiff's bill.

It follows that if the material averments of the bill are sup-ported by the necessary proof, the plaintiff will be entitled in a Court of equity to the relief here sought.

The decree of the Circuit Court No. 2, of Baltimore City, sustaining the demurrers and dismissing the bill passed on the 24th of December, 1902, will be reversed and cause remanded for further proceedings.

*Decree reversed and cause remanded,*
*with costs.*

(Decided July 2nd, 1903.)