PATCH & COMPANY AND MICHAEL PEMBROKE *v.* FIRST
NATIONAL BANK OF MONTPELIER.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed January 7, 1916.

*Mortgages—First and Second Mortgages—Future Advances—*
*Lien—Priority—Requisite Notice—Principal and Surety—*
*Rights of Sureties—Exoneration—He Who Seeks Equity*
*Must Do Equity.*

Where defendant bank, holding a first mortgage on real estate to se-
cure the payment of a specified promissory note and also of future
advances to the mortgagor, took a second mortgage on the same
property, and also a chattel mortgage, securing the same debt,
future advances to the mortgagor, and also notes on which plain-
tiffs were mere sureties, and plaintiffs in a suit in equity sought
to prevent the application of the avails of the mortgaged property
to the payment of advances made under the first mortgage, subse-
quent to the second mortgage, *held* that, although the bank had
notice that plaintiffs were mere sureties, their failure to give no-
tice to the bank to make no further advances under the first
mortgage prevented their claimed lien from attaching prior to
such advances, as more than mere knowledge by such mortgagee
of a subsequent interest of another is required to accomplish that
result.

Where a creditor receives payments and misapplies them to the prej-
udice of a surety, the latter may maintain his right to participate
in such payments in defence of an action at law, although the
right of subrogation is purely equitable, since in such case the
surety would be seeking exoneration, and not subrogation.

He who seeks equity must do equity, and so in such case the sureties
could not be relieved in equity by securing a participation in the
misapplied funds unless they pay, or offer to pay, the amount
legally due from them, or give a valid excuse for the omission,
where it appears that the claimed application would not pay their
whole debt.

Where the avails of mortgaged property received by the mortgagee operate as in involuntary payment on the mortgage debt, the law makes the application according to established rules, and at the very time the money is received.

APPEAL IN CHANCERY.   Heard on the pleadings and finding of facts by the Chancellor, at the September Term, 1914, Washington County, *Slack*, Chancellor.   Decree dismissing the bill with costs.   The plaintiff appealed.

On March 10, 1911, defendant held the following described promissory notes against the then firm of Jellyman & Jones, consisting of W. J. Jellyman and S. H. Jones; a note for $200, discounted February 10, 1911; a note for $300, discounted February 13, 1911; a note for $550, discounted February 16, 1911, all of said notes being payable in thirty days, and bearing the signature of the firm and also that of the partners individually; a note for $1,000, discounted December 12, 1910, payable in four months, and bearing the signature of said firm and also that of plaintiff Michael Pembroke; and a note for $500, discounted December 23, 1910, payable in ninety days, and bearing the signature of said firm and also that of plaintiff Patch & Company.

On March 10, 1911, defendant loaned said firm a further sum of $1,000, taking its promissory note of that date therefor, payable in ninety days, and secured by a mortgage of certain real estate, which was also conditioned for the payment "of all other indebtedness to said bank hereafter contracted for money that said bank shall hereafter loan to said Jellyman & Jones, or either of them, and represented by promissory notes or otherwise," and also by a mortgage of certain personal property; and thereafter on the same day said firm executed and delivered to defendant a second mortgage on the same real estate, conditioned for the payment of all of the notes above described, for the payment of a note for $350, payable to defendant in sixty days, discounted January 30, 1911, and signed by Marvin & Sherburne, and also for the payment "of all other indebtedness to said bank heretofore or hereafter contracted, and represented by notes or otherwise."   Thereafter defendant from time to time loaned said firm money, evidenced by its promissory notes, the aggregate of which, with interest, amounted on October 29, 1913, to $1,089.25.

On July 5, 1913, the firm of Jellyman & Jones was duly adjudged bankrupt, a trustee was duly appointed of that bankrupt

estate, and on September 27, 1913, he conveyed all of the then existing real and personal property described in said three mortgages to defendant, and on October 22, 1913, defendant sold and conveyed all and the same property to one Langre for $3,200, which was all it was worth.

On October 29, 1913, defendant applied the proceeds of said sale, less the charges of the trustee for services and disbursements, amounting to $112.50, in payment of what was then due on the note for $1,000 that was secured by the first mortgage, which then amounted to $1,009, and in payment of what was then due on loans made by defendant to the firm of Jellyman & Jones after the execution of the second real estate mortgage, and in payment of said $300 note and said $550 note, which were secured by the second real estate mortgage, which then amounted to $861.70.    After making all those payments, defendant still had in its hands, as the balance of the proceeds of said sale, $127.55, of which amount it applied $42.51 on the note for $500, signed by Jellyman & Co. and by plaintiff Patch & Co., and $85.04 on the note for $1,000, signed by said firm and by plaintiff Michael Pembroke.    Said $200 note, and said $350 note bearing the signature of Marvin & Sherburne, had been paid by Jellyman & Jones subsequent to the execution of said mortgages and before the bankruptcy of said firm.

To the knowledge of defendant, plaintiffs were mere sureties on said two notes signed by them, respectively.    On September 19, 1913, plaintiff Patch & Company wrote defendant that Patch & Company were mere sureties on said $500 note, and that they ''were relying'' on the second real estate mortgage and said chattel mortgage ''for protection in the matter, and you are hereby forbidden to part with any of said security, or to allow the same to become in any way impaired, until said note is paid.'' Soon after this letter was received defendant notified both plaintiffs that unless they paid said notes signed by them, respectively, on or before September 23, 1913, defendant would realize upon all securities held by it against Jellyman & Jones and apply the proceeds in payment of the notes thereby secured; and before said property was disposed of defendant notified each plaintiff that, if he would pay all indebtedness that defendant then held against the firm of Jellyman & Jones as evidenced by the several notes herein described, defendant would turn over all of said security, but neither plaintiff accepted this proposition, and never paid

anything on either of said two notes signed by them, respectively. And the Chancellor further found: "Plaintiff Pembroke has in his hands the sum of $229.50, which he received from said Jellyman & Jones and which he should pay to defendant, or account for, if there is to be an apportionment of the proceeds that defendant received from said mortgaged property among the several notes hereinbefore described, after deducting the amount of the $1,000 note that was given by Jellyman & Jones at the time the first mortgage was executed."

Actions at law brought by defendant on the two notes signed by plaintiff, respectively, were enjoined pending the determination of the questions involved in this suit, wherein plaintiffs seek to have the proceeds of the property sold by defendant, as aforesaid, applied in payment of said two notes.

*Fred B. Thomas* and *Fred L. Laird* for the plaintiffs.

*Erwin M. Harvey* for the defendant.

Powers, J.    No question is made as to the right of the Bank to apply the avails of the mortgaged property to the payment of the one thousand dollar note secured by the first mortgage. It is insisted, however, that such avails could not, as against the plaintiffs, be used to pay sums representing future advances under that mortgage, for the reason that the Bank, by taking the second mortgage to secure, among others, the notes on which the plaintiffs were sureties, (a fact well known to the Bank), cut off its right, as against them, to hold such advances under the first mortgage, and put the plaintiffs in a position to demand a ratable participation in the proceeds of the property.

The plaintiffs never notified the Bank not to make further advances under its mortgage, but it is argued that the Bank's actual knowledge of the second mortgage charged it with notice of their rights thereunder, and was sufficient to effect the results specified.

This position is untenable. However it may be elsewhere, our rule is as thus stated by Chief Judge Williams in *McDaniels* v. *Colvin*, 16 Vt. 300, 42 Am. Dec. 512, "The correct view of this subject is this, that the creditors, purchasers, or mortgagees may prevent further advances, when they become interested, by giving notice to the first mortgagee of their interest, and an intimation,

at least, that no further advances are to be made on the security of the mortgage as against them.  Something more than a mere knowledge in the mortgagee of such subsequent interest of the creditor, etc., is necessary.  Notice must be given to him to prevent any further dealings between him and the mortgagor on the security.''

The court has not undertaken to say how this notice is to be given, or just what it is to contain; but it is apparent that it must contain enough to show that the junior interest objects to the making of the senior interest any larger.

The defendant argues that the plaintiffs are not entitled to equitable relief because they have not paid or offered to pay all the notes secured by the second mortgage, or even the notes signed by them.  In pursuing this argument, the defendant treats the plaintiffs as sureties seeking subrogation.  Such, however, is not their exact position.  They are sureties seeking participation in payments misapplied, as they say, to their prejudice;—or what amounts to the same thing, they are seeking exoneration to the extent they have been prejudiced by such misapplication.  Subrogation is a purely equitable doctrine.  But if a creditor receives payments and misapplies them to the prejudice of a surety, the latter may assert his right to participate in such payments in defence of an action at law.  *Hurd* v. *Spencer*, 40 Vt. 581, was such a case.  The avails of the mortgaged property here involved are to operate as an involuntary payment upon the mortgage debt.  The law makes the application according to established rules; and such application is, in the eye of the law, made at the very time the money is received by the creditor.  So if the defendant had sued one of these plaintiffs on the note signed by him, and it had been made to appear that it had received payments which the law would apply to his relief, he could have had the benefit thereof in defence of the action.  In this respect the case does not differ from one wherein the creditor has released or misapplied security to the prejudice of the surety, in which case the latter's rights will be protected in an action at law.  This, too, is shown by our cases, *Manchester* v. *Bartlett*, 13 Vt. 315, 37 Am. Dec. 594; *Smith* v. *Day*, 23 Vt. 656; *Hurd* v. *Spencer*, 40 Vt. 581, all of which were actions at law.  The concurrent jurisdiction of the court of chancery, however, is not here denied; but though this jurisdiction is admitted, it would be unfair to afford these plaintiffs equitable relief unless they are

ready to do what equity requires of them in this matter. ''He who seeks equity must do equity'' says the maxim. And applied to this case, this means that the plaintiffs shall not have the relief here sought unless they pay or at least offer to pay the amount equitably due from them or give a valid excuse for the omission. How it would be if by a proper application of the avails of the property the plaintiff's note would be fully paid, we do not say. For, after taking from such avails enough to pay the note and advances hereinbefore referred to, there remains a sum insufficient to clean up the notes on which the plaintiffs are liable,— even though the apportionment be made as they desire.

This very question seems to have been passed upon by this court in an unreported case referred to by Judge Redfield in *McCollum* v. *Hinkley,* 9 Vt. at p. 147. The doctrine of that case, as stated in the head note prepared by the judges, themselves, is that when a surety, who has been prejudiced by the action of the creditor, ''applies to a court of chancery, before suit is brought, as he may do, to be released from his obligation on such debt and it appears that such estate would not have paid the whole debt, the court will require the surety to pay into court, for the benefit of the creditors, the deficiency, out of which the surety will be permitted to deduct his costs, and the balance, if any, be paid to the creditor.''

The books furnish various other applications of this doctrine. Thus, it is held in *McQuiddy* v. *Ware,* 20 Wall. 14, 22 L. ed. 311, and *Wilson Sewing Machine Co.* v. *Curry,* 126 Ind. 161, that one will be denied equitable relief from an alleged irregular judgment who applies without tender of the amount actually due; in *Ware* v. *Thompson's Admr.,* 13 N. J. Eq. 66, and *Cushman* v. *Sutphen,* 42 Ill. 256, that one who seeks relief in equity from an usurious contract must offer to pay the sum legally due; in *Montgomery* v. *Sayer,* 65 Ala. 564, *Smith* v. *Auditor General,* 20 Mich. 398, and the *State Railroad Tax Cases,* 92 U. S. 616, 23 L. ed. 663, that one who seeks an injunction against the collection of a tax invalid in part must offer to pay the valid portion; in *Creed* v. *Scruggs,* 1 Heisk. (Tenn.) 590, that a surety who seeks an injunction against his co-surety who has improperly obtained a judgment against him as a principal, must first pay his just share of the debt; in *Coburn* v. *Coke,* (Ala.) 69 So. 574, that one who brings a bill to quiet title on the ground that the foreign corporation from whom he had bor-

rowed money and to whom he had given a mortgage had failed to comply with the law and was therefore unauthorized to do business in the state, must offer to do equity by returning the money received; in *Still* v. *Buzzell,* 60 Vt. 478, 12 Atl. 209, that one who asks the court of equity to declare a deed absolute in form to be a mortgage and to order a reconveyance, must offer in his bill to pay the balance found against him, if any; and in *Powell* v. *Woodbury,* 85 Vt. 504, 83 Atl. 541, that one having a right to redeem from a trust deed, who seeks an injunction restraining a sale thereunder, must at least offer to pay the trustee enough to satisfy the obligation and expenses of the trust.

Whether the offer in this case must be broad enough to include all the notes secured by the second mortgage, or will be sufficient if it covers the notes on which the plaintiffs are liable, are questions not now for consideration.

*Decree affirmed and cause remanded with leave to the plaintiffs to apply further under the provisions of P. S. 1317, if they be so advised.*