LEOPOLD LARIVIERE *v.* MARIE ANNE LAROCQUE.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

462

*J. A. McNamara* and *F. D. Foley* for the plaintiff.

*Chas. F. Black* and *J. Boone Wilson* for the defendant.

THOMPSON, J. This is a proceeding in chancery in which the plaintiff seeks by his amended bill, on the ground of the mutual mistake of the parties, the cancellation of a conveyance of certain premises in Burlington to the defendant, and to have the premises conveyed to him, and for further relief. After a hearing and finding of facts by the chancellor, there was a decree dismissing the bill. The plaintiff appealed.

The case has once before been here on plaintiff's appeal from a decree dismissing his bill. At the first trial below, the pleadings were framed upon the basis that the title to the premises conveyed was to be held by the defendant for the benefit of the plaintiff; that the legal title only was transferred to her, and the beneficial title or interest passed to and became the plaintiff's. The prayer of the bill sought to have a resulting trust declared in favor of the plaintiff, and to compel the defendant to convey the legal title to him. The defendant claimed, and the chancellor found, that the premises conveyed to the defendant were intended by the plaintiff as a gift to her. On review here the decree was affirmed and the cause remanded, with leave to the plaintiff to apply under the provisions of G. L. 1571. 104 Vt. 192, 157 Atl. 826.

The plaintiff alleges in his amended bill that he purchased the premises and caused them to be conveyed to the defendant solely by reason of and as a result of the mutual mistake of the parties that they were legally man and wife, and that but for such mutual mistake of fact the conveyance would not have been made to the defendant.

██ It appears from the facts found, and from the facts stated in *Lariviere* v. *Lariviere*, 102 Vt. 278, 147 Atl. 700, which was a petition for divorce brought by the defendant against

the plaintiff, of which we take notice, that the plaintiff married Valida Monette on June 3, 1908, at Montreal, Quebec, where they were domiciled. On May 16, 1916, a decree of separation from bed and board was granted to Valida by the Superior Court of Montreal, and since then she has been domiciled in the Province of Quebec. Subsequently the plaintiff became domiciled in Massachusetts, and while there he was granted a divorce from Valida, upon the ground of desertion, which became absolute on April 19, 1924.

On June 16, 1924, the parties went through a marriage service before Henry Benoit, a minister, at Montreal. At that time they had a son about ten years old, born out of wedlock. They both believed from the time of this marriage until January, 1928, and the defendant for some time thereafter, that the marriage was valid and that they were legally husband and wife.

After the marriage and until about January, 1926, the plaintiff lived in Springfield, Mass., and the defendant continued to live in Montreal, where she conducted a small business employing five helpers, supporting herself, and, with some aid from the plaintiff's father, supporting her son and providing for his schooling. The plaintiff's father died before January, 1926, and the plaintiff inherited about $20,000 from his estate.

The plaintiff requested and urged the defendant to sell her business in Montreal and come with their son and live with him at Springfield, Mass. In November, 1925, he went to Montreal and informed her of his father's death. At that time he told her that he expected to inherit about $25,000, and if she would sell her business and go to Springfield to live with him, he would give her half of it. The defendant accepted this offer and she sold her business in Montreal at a sacrifice and went to Springfield and lived there with the plaintiff until they went to Burlington, Vt., in the summer of 1926.

The plaintiff received his inheritance from his father's estate shortly after the defendant went to Springfield. On March 1, 1926, upon her soliciation that she should have some of the money to protect her and her son, as theretofore talked by them, the plaintiff deposited $12,000 in a savings account in the Chapin National Bank in Springfield in the name of ''Marie Ann Lariviere,'' the defendant. On the same day she executed a writing authorizing the plaintiff to draw against such account

as her attorney. The defendant wanted this money to protect her and their son, or, to use the words employed by her as a witness, "to secure her in their support and living."

On July 3, 1926, the plaintiff, acting solely under his authorization as attorney, drew an order for $12,018.55 on the Chapin National Bank, signed "Marie Ann Lariviere by Leo Lariviere, Att'y," payable to the Burlington Savings Bank or order.

The money represented by this order was deposited in the Burlington Savings Bank and in the Burlington Trust Company in the joint names of the plaintiff and defendant, payable to "either or survivor."

In October, 1926, the premises in question, located at No. 355 South Union Street, city of Burlington, were purchased of Ralph S. Cutting and his wife for $15,000. The plaintiff paid $100 to Mr. Cutting at the time of the agreement to purchase, and took a receipt therefor made out to Marie Ann Lariviere. At that time he directed Mr. Cutting to have the premises conveyed to the defendant and stated that he was making a gift of the property to her. On October 29, 1926, the Cuttings, by their warranty deed, conveyed the property to "Marie Ann Lariviere, her heirs and assigns, to their own proper use, benefit and behoof forever."

The property was paid for as follows: $100, at the time the receipt was given, $5,500, by an order drawn by the plaintiff upon the above-mentioned funds deposited in the Burlington Trust Company, $400, drawn by the defendant from the funds deposited in the Burlington Savings Bank, and the balance with money raised by a mortgage on the property executed by the parties to the Burlington Trust Company.

The $6,000 unexpended of the $12,000 deposited in the Burlington banks was spent in remodeling the property and for furnishings, for the living expenses of the parties, and upon the plaintiff's automobile.

The chancellor found that the plaintiff directed the premises to be conveyed to the defendant "with the intent then and there of giving these premises to her," and that she accepted them as a compliance with his agreement made in November, 1925, that he would give her half of his inheritance if she would sell her business in Montreal and go to Springfield and live with him

At some time after the parties were married, Valida Monette brought a suit in the Province of Quebec to collect the alimentary pension allowed her in her decree of separation. The divorce obtained by the plaintiff in Massachusetts was pleaded in defense. It was held by the Court of Kings Bench that under the law of the Province the Massachusetts divorce was not valid in the Province of Quebec, and that her marriage with the plaintiff was not dissolved in that jurisdiction. *Lariviere* v. *Lariviere, supra.*

It was held by this Court in *Lariviere* v. *Lariviere,* that since the parties were married in the Province of Quebec, their status was governed by the law of that jurisdiction, and, as their marriage was illegal and void in that jurisdiction, it was illegal and void in this State.

The chancellor found:

> ''Although the plaintiff, before and after going through the marriage ceremony with the defendant, had recognized his responsibility for the illegitimate son of the parties, and had, from time to time, sent the defendant sums of money, I find that he would not have made the gift of money nor have had the property transferred to the defendant had he not believed that they were lawfully married.

> ''The plaintiff has always been improvident and careless of his family duties, as the defendant knew when, in November, 1925, he asked her to come to Springfield, Mass. She was very fond of the child and had always been to the major expense of his support and education.

> ''Although she also believed that they were lawfully married, I am unable to find that she would have given up her business in Montreal at a sacrifice and have gone to Springfield to live with the plaintiff except upon his assurance that he would make over to her the sum of money which he promised. For the sake of the child she was very anxious to keep the family together, but she was very insistent upon financial security.''

That the parties acted under a mutual mistake as to their marriage status at all times material is not questioned. That the conveyance of the property in question to the defendant "was made solely by reason of and as a result of the mutual mistake of the parties that they were legally man and wife." as alleged by the plaintiff, is not so certain. The chancellor failed to make such a finding, and he stated that he was unable to find that the defendant would have given up her business at a sacrifice and have gone to Springfield to live with the plaintiff except upon his assurance that he would make over to her the sum of money which he promised.

 Neither party has briefed any exception to the finding of facts, so the facts found by the chancellor are conclusive in this Court.

 The plaintiff contends that it appears from the facts found that the conveyance was made to the defendant under a mutual mistake of fact, and he assumes that, in that event, he is entitled to have the conveyance cancelled. This assumption is not correct. The application to a court of equity for the cancellation or rescission of agreements, conveyances and other instruments is not founded on an absolute right, as in most actions at law, but is rather an appeal to the sound discretion of the court. The discretion to be exercised is not an arbitrary or capricious discretion, but is a sound and reasonable one to be exercised according to what is reasonable and proper under the circumstances of the particular case. It, should be exercised with great caution, and in conformity with established principles of equity jurisprudence; and before granting relief it should appear that no injustice will be done, by placing both parties in the positions they occupied before the contract or conveyance was made. *Bank of Bellows Falls* v. *Rutland & Burlington R. R. Co.*, 28 Vt. 470, 481; *Glastenbury* v. *McDonald*, 44 Vt. 450, 453; *Springfield & N. E. Traction Co.* v. *Warrick*, 249 Ill. 470, 476, 94 N. E. 933, Ann. Cas. 1912A, 187; *Calhoun* v. *Delhi & M. R. Co.*, 121 N. Y. 69, 24 N. E. 27, 8 L. R. A. 248; *Farmington* v. *Sandy River Nat. Bank*, 85 Me. 46, 26 Atl. 965; 9 C. J. 1161; 4 R. C. L. 487.

In *Bank of Bellows Falls* v. *Rutland & Burlington R. R. Co.*, this Court said:

"There are many cases in the books, in which courts of equity have given relief, by decreeing the delivery up or the cancellation or rescission of agreements, deeds and other instruments, but in such cases, the jurisdiction of chancery is put upon some peculiar ground, and rests in the sound discretion of the chancellor, and is not a matter of absolute right. The discretion of the chancellor, however, is not to be an arbitrary or a capricious discretion, but a reasonable one, which will commend itself to the conscience of the chancellor, under all the circumstances of the particular case. The jurisdiction, in such a case, proceeds upon the ground of administering protective, or preventive justice, and the cases go upon the principal *quia timet*, as it is technically called."

The chancellor found:

"I am requested to find that the mistake of the parties relative to the legality of their marriage was a mistake relative to the law of a foreign jurisdiction and therefore a mistake of fact. Without defining the kind of mistake, whether of law or fact, I find that by the law of the Province of Quebec, where the marriage ceremony was performed, the plaintiff, unknown to both parties, already had a legal wife and could not lawfully marry the defendant."

Since the chancellor dismissed the bill, it is evident that he ruled that, irrespective of whether the mistake was one of law or of fact, the plaintiff had otherwise failed to make a case that entitled him in equity to the relief he seeks. The chancellor did not state the ground on which he dismissed the bill. However, if the facts found warrant an inference that supports the decree, and is necessary in support of the same, we will assume that the chancellor made the inference. *County of Bennington* v. *Manchester*, 87 Vt. 555, 558, 90 Atl. 502; *Fraser* v. *Nerney*, 89 Vt. 257, 260, 95 Atl. 501.

The defendant alleges in her answer that, since the property was conveyed to her, she has had full charge and responsibility in remodeling it into an apartment house, and in managing and maintaining it; that she has contracted and paid all the bills; that by hard work and sacrifice she has not only supported herself, but has supported and is educating her son. She alleges further that it would be unconscionable to set aside the conveyance because the plaintiff has had her companionship and service with no obligation to compensate her therefor; that it is impossible to restore her to the position she would have been in but for the performance of her agreement to go to Springfield and live with the plaintiff; that if the conveyance is set aside, she will be without means of supporting herself and her son; that the net income derived from the property would not have been sufficient to have enabled her to support and educate her son except by the hard work done, and the sacrifice made, by her.

■ ■ The general rule, subject to certain exceptions and limitations which are not material here, is that one who seeks the cancellation or rescission of a conveyance, contract, or other instrument, must, as a condition to his obtaining relief, restore the other party to the position he occupied before the transaction which is sought to be cancelled; the remedy of cancellation, like other forms of equitable relief, being subject to the maxim that he who seeks equity must do equity. 9 C. J. 1207; *Neblett* v. *Macfarland*, 92 U. S. 101, 103, 23 L. ed. 471; *Naugle* v. *Yerkes*, 187 Ill. 358, 58 N. E. 310; *Rigdon* v. *Walcott*, 141 Ill. 649, 31 N. E. 158. See, also, *Patch & Co.* v. *First Nat. Bank of Montpelier*, 90 Vt. 4, 9, 96 Atl. 423; *Cooley* v. *Hatch*, 97 Vt. 484, 493, 124 Atl. 589.

In *Neblett* v. *Macfarland*, the Court said:

> "In cases of this character, the general principle is, that he who seeks equity must do equity; that the party against whom relief is sought shall be remitted to the position he occupied before the transaction complained of. The court proceeds on the principle, that, as the transaction ought never to have taken place, the parties are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction."

■ And, since the object and purpose of a court in making a cancellation or rescission of a contract or conveyance is to place the parties *in statu quo,* a cancellation or rescission is never directed when this cannot be done, unless demanded by the clearest and strongest equity. *Grymes* v. *Sanders,* 93 U. S. 55, 62, 23 L. ed. 798; *United States* v. *Norris* (C. C. A.), 222 Fed. 14, 21; *Hamblin* v. *Bishop* (C. C.), 41 Fed. 74, 82; *Blake* v. *Pine Mountain Iron & Coal Co.,* 76 Fed. 624, 639, 640, 22 C. C. A. 430; *In re Miley* (D. C.), 187 Fed. 177, 181; *Bigelow* v. *Wilson,* 99 Iowa, 456, 464, 64 N. W. 798; *Stearns* v. *Beckham,* 31 Grat. (Va.), 379, 417; *Laidley* v. *Laidley,* 25 W. Va. 525, 529; *Findlay* v. *Baltimore Trust Co.,* 97 Md. 722, 55 Atl. 379, 380, 381; *Thompson* v. *Currier,* 70 N. H. 267, 47 Atl. 79; *Fink* v. *Farmers' Bank,* 178 Pa. 154, 35 Atl. 636, 637, 56 A. S. R. 746; *Piedmont Land Improv. Co.* v. *Piedmont Foundry & Mach. Co.,* 96 Ala. 389, 393, 11 So. 332.

In *Grymes* v. *Sanders,* the Court said:

> "A court of equity is always reluctant to rescind, unless the parties can be put back *in statu quo.* If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it."

In *Fink* v. *Farmers' Bank,* it is said:

> "Equity has so far contented itself with relief in cases of mutual mistake of legal rights where it was possible to restore both parties to *status quo.* If that cannot be fully done, equity will not assist one party to unload the burden on the other."

Mr. Pomeroy formulates the rule as follows:

> "In order to obtain relief, the complainant must restore the other party to the condition in which he stood before the transaction. This requirement is based upon the maxim that he who seeks equity must do equity. In case of fraud, if the defendant's act has prevented a complete restoration of the *status quo,* he cannot, in justice, urge this fact as a defense to the rescission; but in

other cases, such as mistake, it would seem reasonable that the *status quo* should be completely restored as a condition of equitable relief.'' 5 Pomeroy Eq. Jurisp. (2d ed.) § 2110 (§ 688).

The bare statement in the plaintiff's brief that ''the relief sought will restore the parties to *status quo*,'' is not supported by the facts found.

The plaintiff recognized his responsibility for the illegitimate son of the parties, but he has always been improvident, and while, from time to time, he sent money to the defendant, she has always been to the major expense of the support and education of their son. She, relying upon the voluntary agreement of the plaintiff to give her half of his inheritance if she and their son would go to Springfield and live with him, sold her business in Montreal, which was her only means of support, at a sacrifice, and went to Springfield with their son and lived with him. Later, she accepted the conveyance of the premises to her as a compliance by him with his agreement. For a few years he had companionship with and the services of the defendant, both believing that they were lawfully married. The very nature of the entire transaction was such that it is impossible for the plaintiff to restore the defendant to her former position. It is not claimed that the plaintiff was influenced to have the premises conveyed to the defendant by any inequitable conduct on her part. Whatever he did was done voluntarily. Nor is it claimed that there was any mistake by him as to the legal effect of the conveyance, or that the transaction was other than as the parties intended it should be.

The plaintiff seeks equity, but he has not offered or shown any inclination to do equity. He first sought to take the premises from the defendant on grounds which the chancellor found were not supported by the evidence. He now seeks not only to have the conveyance cancelled and the premises conveyed to him, but he also asks the court to order an accounting of the rents and profits of the property, which the defendant alleges, and it is not denied, have been sufficient only to pay the maintenance and managment of the property and her support and the support and education of their son.

 ██ Since the plaintiff is unable to restore the defend‧ant to *status quo*, the burden is upon him to show that the clear

est and strongest equity demands a decree of cancellation. It can reasonably be inferred from the facts found that if a decree of cancellation were ordered, the defendant would be left penniless. That there is a strong equity in her favor cannot be denied. It can be inferred from the facts found that the equity in plaintiff's favor, if any there be, is not so clear and strong as to demand a decree of cancellation; and, in support of the decree, we will assume that the chancellor made that inference.

Furthermore, it is well settled that where a ruling is addressed to the discretion of the trial court, it cannot be revised in this Court unless it appears clearly that there was an abuse of that discretion. We cannot say from the record before us that the chancellor abused his discretion in dismissing the bill; nor does the plaintiff make any claim that it was abused.

Since our disposition of the case does not involve the question whether the mistake of the parties was one of fact or of law, that question is not considered.

*Decree affirmed, and cause remanded.*